Ronald W. Opsahl, Esq.
William Perry Pendley, Esq. (D.C. Bar No. 378906)
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
ropsahl@mountainstateslegal.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNITIES FOR A GREAT NORTHWEST ) <br> 5957 Champion Road ) <br> Libby, Montana 59923, and ) <br> ) <br> MOUNTAIN STATES LEGAL FOUNDATION ) <br> 2596 South Lewis Way ) <br> Lakewood, Colorado 80227, ) <br> ) <br>         Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> UNITED STATES DEPARTMENT OF THE ) <br> INTERIOR ) <br> 1849 C Street, NW ) <br> Washington, D.C. 20240, ) <br> ) <br> UNITED STATES FISH AND WILDLIFE ) <br> SERVICE ) <br> 1849 C Street, NW ) <br> Washington, D.C. 20240, ) <br> ) <br> DIRK KEMPTHORNE ) <br> Secretary of the Interior ) <br> 1849 C Street, NW ) <br> Washington, D.C. 20240, ) <br> ) <br> H. DALE HALL ) <br> Director, U.S. Fish and Wildlife Service ) <br> 1849 C Street, NW ) <br> Washington, D.C. 20240, ) <br> ) | Case No. _____ |

REN LOHOEFENER                                    )
Regional Director, Pacific Region                 )
U.S. Fish and Wildlife Service                    )
911 NE 11th Avenue                                )
Portland, Oregon 97232, and                       )
                                                  )
J. MITCH KING                                     )
Regional Director, Mountain-Prairie Region        )
U.S. Fish and Wildlife Service                    )
134 Union Boulevard                               )
Lakewood, Colorado 80228,                         )
                                                  )
            Defendants.                            )
                                                  )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Communities for a Great Northwest ("CGNW") and Mountain States Legal

Foundation ("MSLF"), by and through their attorneys, hereby file this Complaint against the

above-named Defendants and allege as follows:

## INTRODUCTION

1.      In this action, Plaintiffs seek review of a biological opinion ("BiOp") issued by

the United States Fish and Wildlife Service ("FWS") on February 9, 2004, following

consultation with the United States Forest Service ("Forest Service") under Section 7 of the

Endangered Species Act ("ESA"), 16 U.S.C. § 1536. The biological opinion (hereinafter "2004

BiOp") addresses the purported effects of motorized access within the Kootenai, Idaho

Panhandle, and Lolo National Forests.

2.      The 2004 BiOp evaluated the purported potential impacts of motorized access on

the Selkirk and Cabinet-Yaak subpopulations of the grizzly bear (*Ursus arctos horribilis*);

however, it did not address those potential impacts on the recovery of the entire, listed species.

3.      Based upon the 2004 BiOp, the Forest Service severely restricted motorized

access on the Kootenai, Idaho Panhandle, and Lolo National Forests. These access restrictions

2

limited Plaintiffs' members' access to these national forests, significantly and negatively impacting their lawful use of the forests.

4.    For this, and other reasons to be identified further in the course of this litigation, Plaintiffs seek a declaration that the 2004 BiOp violates Section 7 of the ESA and, as such, is arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2)(A).

5.    The 2004 BiOp served as the basis for the Kootenai, Idaho Panhandle, and Lolo National Forests Land and Resource Management Plans Amendment for Motorized Access within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones and is incorporated by reference into the proposed Revised Land and Resource Management Plans for the Kootenai and Idaho Panhandle National Forests. Further, the 2004 BiOp has been incorporated into other land management planning documents beyond those for which it was drafted , including the Quartz-Cottonwood Road Project Environmental Assessment, *United States Forest Service* (Aug. 2005) and the Myrtle Creek Healthy Forests Restoration Project Draft Environmental Impact Statement, *United States Forest Service* (May 2006). Additionally, it is likely that the 2004 BiOp will also be used as guidance in the environmental planning of the Rising Cougar Project proposed by the Forest Service in the Idaho Panhandle National Forests.

6.    Therefore, Plaintiffs seek an injunction directing the FWS to withdraw the 2004 BiOp and reinitiate consultation with the Forest Service on a schedule set by this Court.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction, pursuant to 28 U.S.C. § 1331 and 16 U.S.C. § 1540(c), because the matter in controversy arises under the laws of the United States, including

3

but not limited to the ESA and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*

8.     Venue properly rests in this Court, pursuant to 28 U.S.C. § 1391(e), because Defendants United States Department of Interior, the FWS, Kempthorne, and Hall reside within this District.

9.     Pursuant to 16 U.S.C. § 1540(g)(2)(A)(i), Plaintiffs provided Defendants written notice of the FWS's violation of the ESA by letter dated August 15, 2006, sent certified mail, return receipt requested. All Defendants received this letter by August 23, 2006. A copy of this letter is attached hereto as Exhibit 1.

## PARTIES

10.     Plaintiff CGNW is a non-profit natural resources education and information association headquartered in Libby, Montana. Its members live throughout the Inland Northwest and engage in activities within the national forest lands including, fishing, hunting, hiking, camping, timber harvesting, fuelwood gathering, mining, berry picking, sightseeing, finding and enjoying solitude, and wildlife viewing. Roads, trails, and pathways in national forest lands provide access for CGNW members to engage in these activities. CGNW and its members have worked with federal land management agencies and local governments to develop management plans for national forests within the Inland Northwest, including the Kootenai and Idaho Panhandle National Forests. As a result, CGNW and its members have expended tremendous monetary and human resources to ensure the proper management of the national forests affected by the 2004 BiOp.

11.     Plaintiff MSLF is a voluntary, non-profit, public interest legal foundation with its principal place of business in Lakewood, Colorado. MSLF is dedicated to individual liberty, the

right to own and use property, limited and ethical government, and the free enterprise system. It has members who live and work throughout the United States, particularly the American West, including the States of Washington, Idaho, Montana, and Wyoming. MSLF and its members are interested in and affected adversely by the manner in which the ESA is implemented by federal agencies and the interpretation of that statute by the courts. MSLF members include ranchers, miners, oil and gas producers, timbermen, farmers, and property owners who live on and/or earn a living from the public and private lands that grizzly bears may inhabit, and that are affected by the 2004 BiOp.

12.    Plaintiffs' members expect the FWS to comply fully with all provisions of the ESA, including the Section 4 listing procedures and the Section 7 consultation requirements.

13.    The FWS's failure to issue a lawful BiOp based upon the properly listed population of threatened grizzly bear has adversely affected Plaintiffs' members' recreational and educational interests. These adverse affects will continue unless the relief requested is granted. These are actual, concrete injuries caused by Defendants' failure to comply with mandatory duties under the ESA and APA. Plaintiffs have no adequate remedy at law and the injuries will be redressed by the relief sought.

14.    Plaintiffs' members spend time in areas adversely affected by the FWS's violations of the ESA. Plaintiffs' members intend to continue to use and enjoy on a frequent, regular, and ongoing basis the lands adversely affected by the agency actions challenged in this Complaint.

15.    Defendant United States Department of the Interior is the federal administrative agency charged with the administration of the ESA as it applies to terrestrial and certain aquatic species of plants and animals, including the grizzly bear.

16.    Defendant FWS is the federal administrative agency within the Department of the Interior responsible for administering the ESA. The FWS issued the 2004 BiOp challenged herein.

17.    Defendant Dirk Kempthorne is the Secretary of the Interior and is responsible for overseeing the Department of the Interior and the FWS. Secretary Kempthorne is being sued in his official capacity.

18.    Defendant H. Dale Hall is the Director of the FWS and is responsible for overseeing the administration of the ESA. Mr. Hall is being sued in his official capacity.

19.    Defendant Ren Lohoefener is the Regional Director for the Pacific Region (Region 1) of the FWS and is responsible for administering the ESA in the states of Washington and Idaho, among others. Mr. Lohoefener is being sued in his official capacity.

20.    Defendant J. Mitch King is the Regional Director for the Mountain-Prairie Region (Region 6) of the FWS and is responsible for administering the ESA in the states of Montana and Wyoming, among others. Mr. King is being sued in his official capacity.

## FACTUAL BACKGROUND

21.    In 1975, the FWS listed the grizzly bear as a threatened species in the contiguous 48 states pursuant to Section 4 of the ESA. 40 *Fed. Reg.* 31,734 (July 28, 1975) (codified at 50 C.F.R. § 17.32 (1975), 50 C.F.R. § 17.11 (2005)). The listing determination identified three ecosystems in which grizzly bear most often occur: the Selway-Bitterroot Ecosystem, the Bob Marshall Ecosystem, and the Yellowstone Ecosystem. *Id.* at 31,734–31,735. Although these three ecosystems were identified, the FWS did not designate them as recovery units or list them as Distinct Population Segments ("DPS"). *Id.*

6

22.    In 1976, the FWS issued a notice of proposed rulemaking to designate four areas as critical habitat. 41 *Fed. Reg.* 48,757 (Nov. 5, 1976). However, no final regulation designating critical habitat was issued and critical habitat remains undesignated. 50 C.F.R. § 17.11.

23.    In a 1979 memorandum, FWS Director Greenwalt reminded agency personnel:

> [J]eopardy opinions should be rendered only when the proposed activity/action/program, along with cumulative effects, will jeopardize the continued existence of the entire listed species or listed population. <u>Jeopardy opinions cannot be used for individuals or populations unless the loss of such will jeopardize the listed species or listed population throughout its range.</u>

Memorandum from Director Wallenstrom to Regional Directors 1 (Mar. 3, 1986) (hereinafter "1986 Memorandum") (*quoting* April 26, 1979, memorandum from Director Greenwalt) (emphasis added).

24.    In 1982, a Grizzly Bear Recovery Plan was issued. U.S. Fish & Wildlife Serv., *Grizzly Bear Recovery Plan* (Jan. 29, 1982).

25.    In 1986, FWS Director Wallenstrom issued a memorandum entitled "Jeopardy Standard Under the Endangered Species Act," which provided guidance to all Regional Directors that subpopulations of nine listed species, including grizzly bear, which were not themselves listed as DPSs, were to be used in making jeopardy determinations instead of the entire listed species or population. 1986 Memorandum.

26.    The FWS did not publish the 1986 Memorandum, did not provide the public notice or opportunity for comment, and did not provide legal justification for its identification of the nine species to be afforded this unprecedented treatment.

27.    Although the ESA requires the use of the entire listed species when the FWS makes its jeopardy determinations and then-existing FWS policy required the same, the 1986 Memorandum cited no authority for its departure from this rule. Instead, the FWS simply stated "[I]t is our intent to allow a limited exception to the established jeopardy standard to more

7

adequately protect certain wide-ranging species for which the application of the standard is

problematical." *Id.* at 2.

28.    The 1986 Memorandum continued:

The species must be composed of discrete population segments that can be dealt
with separately when assessing the impact of a given Federal action. Ideally, the
identification of these segments is supported by a Service document, *i.e.*, separate
recovery plan, recovery objectives that relate to subpopulations, recognition of
separate taxonomic status or geographic isolation, etc. It would not be required,
however, that the species actually be listed on the basis of such population
categories.

*Id.* at 2–3.

29.    The Memorandum then designated, *inter alia*, the six subpopulations of grizzly

bear identified in the Recovery Plans for this extra-statutory treatment. *Id.* at 3.

30.    In 1993, the FWS revised its Grizzly Bear Recovery Plan. Fish & Wildlife Serv.,

*Grizzly Bear Recovery Plan* (Sept. 10, 1993).

31.    Both the 1982 and 1993 Plans identify six subpopulations of grizzly:  the

Yellowstone, the Northern Continental Divide, the Cabinet-Yaak, the Selkirk, the Selway-

Bitterroot, and the North Cascades. *Id.* None of these subpopulations has ever been listed as a

DPS under Section 4 of the ESA.

32.    The 1993 Recovery Plan provides that "Grizzly bear populations may be listed,

recovered, and delisted separately." 1993 Recovery Plan at 17. For any such change, public

notice and comment and publication of a final rule in the Federal Register would be required. *Id.*

33.    In 2004, at the request of the Forest Service, the FWS issued a biological opinion

regarding the Forest Service's proposed Forest Plan amendments for motorized access within the

Selkirk and Cabinet-Yaak ecosystems. U.S. Fish & Wildlife Serv., *Biological Opinion on the*

*Proposed Forest Plan Amendments for Motorized Access Management within the Selkirk and*

*Cabinet-Yaak Grizzly Bear Recovery Zones for the Kootenai, Idaho Panhandle, and Lolo National Forests* (Feb. 9, 2004) (the "2004 BiOp").

34.    The 2004 BiOp determined that implementation of the proposed amendments was not likely to jeopardize the continued existence of the grizzly bear, among other federally listed species, and provided an Incidental Take Statement with reasonable and prudent measures and terms and conditions to minimize incidental take of the grizzly bear. *Id.*

35.    In the 2004 BiOp, the FWS provided individual analyses for the Selkirk and Cabinet-Yaak subpopulations of grizzly bear. 2004 BiOp 32–62.

36.    Moreover, the 2004 BiOp expressly based its jeopardy opinion on the proposed action's potential impact to the Selkirk and Cabinet-Yaak subpopulations, individually. *Id.* at 125–127.

37.    The FWS did not base the 2004 BiOp on the proposed actions' potential impacts to the species as listed, *i.e.*, to the entire grizzly bear population in the contiguous 48 states, as required by the ESA.

38.    Likewise, the Incidental Take Statement provided in the 2004 BiOp also provides standards based upon the Selkirk and Cabinet-Yaak subpopulations.

39.    Based upon the 2004 BiOp and its Reasonable and Prudent Alternatives and Incidental Take Statement, the Forest Service imposed severe restrictions on motorized access on the Kootenai, Idaho Panhandle, and Lolo National Forests. U.S. Forest Serv., *Record of Decision: Forest Plan Amendments for Motorized Access Management within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones*, at ROD-12 (Mar. 2004) ("The requirements [of the 2004 BiOp] affect approximately 1.1 million acres of National Forest System lands . . ..").

40.    Among these restrictions were provisions to reduce the total open or restricted use roads by 544 miles, which would close more than 32,000 acres to motorized access. *Id.* at ROD-22, ROD-39.

41.    These motorized access restrictions have significant and negative affects on Plaintiffs' members' lawful use of these national forests, such as recreation, timber harvesting, grazing, mining, etc.

42.    Moreover, the 2004 BiOp has been extended beyond the project for which it was drafted. *See, e.g.*, U.S. Forest Serv., *Proposed Land Management Plan: Kootenai National Forest* 3-5 (May 2006); U.S. Forest Serv., *Proposed Land Management Plan: Idaho Panhandle National Forests* 3-6 (May 2006); U.S. Forest Serv., *Draft Environmental Impact Statement: Myrtle Creek Healthy Forests Restoration Act Project* (May 2006); U.S. Forest Serv., *Environmental Assessment: Quartz-Cottonwood Road Project* 61 (Aug. 2005).

43.    It is likely that the 2004 BiOp will also serve as guidance in the U.S. Forest Service's proposed Rising Cougar Project, a project with the dual goals of maintaining and restoring natural disturbance regimes to a region of the Idaho Panhandle National Forests and managing motorized access and road densities for the benefit of grizzly bear.

44.    Thus, it is clear that the 2004 BiOp has exceeded the purpose for which it was drafted, and will continue to be utilized in future Forest Service projects, to the detriment of Plaintiffs and their members.

## FIRST CLAIM FOR RELIEF
### Violation of Section 7 of the ESA

45.    Plaintiffs incorporate the allegations in paragraphs 1–44 as if fully set forth herein.

46.    The APA authorizes courts reviewing agency action to hold unlawful and set aside final agency action, findings, and conclusions that are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Biological opinions issued pursuant to Section 7 of the ESA are reviewed under this provision of the APA. *Bennett v. Spear*, 520 U.S. 154, 175 (1997).

47.    The ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). To this end, the ESA requires Defendants protect such species by listing them as either "threatened" or "endangered." *Id.* § 1533.

48.    In order to effectuate the purposes of the ESA, federal agencies are required to engage in consultation with the FWS to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the adverse modification of habitat of such species . . . determined . . . to be critical." 16 U.S.C. § 1536(a)(2). This consultation is known as Section 7 consultation.

49.    The ESA defines an endangered species as "any species which is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). Likewise, a threatened species is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

50.    The statutory definition of "species" includes "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). Thus,

the ESA expressly provides that a DPS may be listed separately; the listed DPS may then constitute a separate species for purposes of Section 7 consultation.

51.      Under Section 7 consultation, a federal agency proposing an action that "may affect" a listed species, including the grizzly bear, must prepare and provide the FWS a "biological assessment" of the effects of the proposed action. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a). For those actions that may adversely affect a species, the FWS must review all information provided by the action agency, as well as any other relevant information, to determine whether the proposed action is likely to jeopardize a listed species or destroy or adversely modify its designated critical habitat. 50 C.F.R. § 402.14(h)(3).

52.      At the completion of the Section 7 consultation process, the FWS issues a BiOp that determines if the agency action is likely to jeopardize the species' continued survival and/or is likely to adversely modify the species' critical habitat. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3).

53.      Nowhere does the ESA or its implementing regulations provide that jeopardy determinations may be made on anything less than the entire listed species.

54.      In fact, FWS regulations expressly provide that jeopardy determinations are to be based on whether the continued existence of a listed species is likely to be jeopardized. 50 C.F.R. § 402.12(h)(3) (2005) ("The Biological Opinion shall include . . . [t]he Service's opinion on whether the action is likely to jeopardize the continued existence of a listed species . . .; or, the action is not likely to jeopardize the continued existence of a listed species . . ..") (both emphasis added).

12

55.    The FWS has violated the requirements of Sections 4 and 7 of the ESA and its implementing regulations by failing to base its jeopardy determination on the entirety of the listed species in its 2004 BiOp.

56.    Therefore, the FWS's 2004 BiOp is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  5 U.S.C. §§ 701–706.

### SECOND CLAIM FOR RELIEF
**Violation of Section 4 of the ESA**

57.    Plaintiffs incorporate the allegations in paragraphs 1–56 as if fully set forth herein.

58.    To be afforded protections under the ESA, a species or DPS must be designated, after public notice and opportunity to comment, as threatened or endangered, in accordance with Section 4 of the ESA.  16 U.S.C. § 1533.

59.    Section 4 of the ESA requires that the Secretary publish in the Federal Register, not less than 90 days before the effective date of the final rule, a "general notice and the complete text" of the proposed rule designating a species as threatened or endangered. *Id.* § 1533(b)(5)(A).

60.    Moreover, the ESA expressly requires the Secretary to follow the procedures outlined in the APA. *Id.* § 1533(b)(4) ("Except as provided in paragraphs (5) and (6) of this subsection [16 U.S.C. § 1533(b)], the provisions of section 553 of Title 5 (relating to rulemaking procedures), shall apply to any regulation promulgated to carry out the purposes of this chapter.").

61.    The APA provides:

After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation.  After

consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

5 U.S.C. § 553(c).

62.    Without providing the public notice or an opportunity to comment, and without following the procedures required by the ESA and the APA, the FWS created *de facto* DPSs for the grizzly bear when it issued the 1986 Memorandum.  1986 Memorandum at 2–3.

63.    Creation of *de facto* DPSs through issuance of the 1986 Memorandum violated ESA Section 4 and the APA.

64.    Accordingly, the FWS's 1986 Memorandum is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  5 U.S.C. §§ 701–706.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Declare that the FWS has violated Section 7 of the ESA and its implementing regulations by basing its jeopardy determination on less than the entirety of the listed species of grizzly bear in the 2004 BiOp; as such, the 2004 BiOp is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2.    Enjoin the FWS to withdraw the 2004 BiOp, notify the Forest Service of the withdrawal, and reinitiate consultation with the Forest Service in order to prepare a lawful BiOp for actions in and around grizzly bear habitat, on a schedule to be set by the Court;

3.    Declare that the FWS has violated Section 4 of the ESA and its implementing regulations by creating *de facto* DPSs without following the procedure required by the ESA and the APA;

14

4.     Order the FWS to withdraw the 1986 Memorandum, notify the Forest Service of the withdrawal, and reinitiate consultation with the Forest Service in order to prepare a lawful BiOp for actions in and around grizzly bear habitat, on a schedule to be set by the Court;

5.     Enjoin Defendants from using unlisted subpopulations of species as a basis for jeopardy determinations resulting from either formal or informal Section 7 consultation;

6.     Award Plaintiffs their reasonable fees, costs, expenses, and disbursements, including attorneys fees, associated with this litigation in accordance with law, including the Equal Access to Justice Act, 28 U.S.C. § 2412, and the Endangered Species Act, 16 U.S.C. § 1540(g)(4);

7.     Award Plaintiffs such further relief as this Court deems just and equitable.

DATED this 25th day of October 2006.

Respectfully Submitted By:

MOUNTAIN STATES LEGAL FOUNDATION

_____

Ronald W. Opsahl, Esq.

_____

William Perry Pendley, Esq. (D.C. Bar No. 378906)
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)

Attorneys for Plaintiffs

4.     Order the FWS to withdraw the 1986 Memorandum, notify the Forest Service of the withdrawal, and reinitiate consultation with the Forest Service in order to prepare a lawful BiOp for actions in and around grizzly bear habitat, on a schedule to be set by the Court;

5.     Enjoin Defendants from using unlisted subpopulations of species as a basis for jeopardy determinations resulting from either formal or informal Section 7 consultation;

6.     Award Plaintiffs their reasonable fees, costs, expenses, and disbursements, including attorneys fees, associated with this litigation in accordance with law, including the Equal Access to Justice Act, 28 U.S.C. § 2412, and the Endangered Species Act, 16 U.S.C. § 1540(g)(4);

7.     Award Plaintiffs such further relief as this Court deems just and equitable.

DATED this 25th day of October 2006.

Respectfully Submitted By:

MOUNTAIN STATES LEGAL FOUNDATION

Ronald W. Opsahl, Esq.

William Perry Pendley, Esq. (D.C. Bar No. 378906)
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)

Attorneys for Plaintiffs

15



MOUNTAIN
STATES
LEGAL
FOUNDATION

2596 South Lewis Way
Lakewood, Colorado 80227
303-292-2021 • FAX 303-292-1980
www.mountainstateslegal.org

August 15, 2006

The Honorable Dirk Kempthorne          VIA CERTIFIED MAIL
Secretary of the Interior              # 7004 2510 0006 1985 8024
1849 C Street, NW                      RETURN RECEIPT REQUESTED
Washington, D.C. 20240

Mr. H. Dale Hall                       VIA CERTIFIED MAIL
Director                               # 7004 2510 0006 1985 8031
U.S. Fish and Wildlife Service         RETURN RECEIPT REQUESTED
1849 C Street, NW
Washington, D.C. 20240

Mr. David B. Allen                     VIA CERTIFIED MAIL
Regional Director                      # 7004 2510 0006 1985 8048
U.S. Fish and Wildlife Service, Pacific Region    RETURN RECEIPT REQUESTED
911 NE 11th Avenue
Portland, Oregon 97232

Mr. Ralph O. Morgenweck                VIA CERTIFIED MAIL
Regional Director                      # 7004 2510 0006 1985 8055
U.S. Fish and Wildlife Service, Mountain-Prairie Region    RETURN RECEIPT REQUESTED
134 Union Boulevard
Lakewood, Colorado 80228

Re:    Notice of Intent to Sue Under 16 U.S.C. § 1540(g)(2)(A);
       *Biological Opinion for the Kootenai, Idaho Panhandle, and Lolo National
       Forests Land and Resource Management Plans Amendment for Motorized
       Access within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones*

Dear Secretary Kempthorne:

       Pursuant to 16 U.S.C. § 1540(g)(2)(A), the Secretary of Interior and the United States
Fish and Wildlife Service (FWS) are hereby notified that the Biological Opinion for the
Kootenai, Idaho Panhandle, and Lolo National Forests Land and Resource Management Plans
Amendment for Motorized Access within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery
Zones (FWS Ref. 1-9-02-F-148) (Feb. 9, 2004) (the "2004 BiOp") violates the Endangered
Species Act (ESA) because the FWS used subpopulations of grizzly bear, which are not listed as



PLAINTIFF'S
EXHIBIT

threatened or endangered under the Endangered Species Act ("ESA"), as the basis for its jeopardy determination.

The BiOp served as the basis for the Kootenai, Idaho Panhandle, and Lolo National Forests Land and Resource Management Plans Amendment for Motorized Access within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones and is incorporated by reference into the proposed Revised Land and Resource Management Plans for the Kootenai and Idaho Panhandle National Forests. Further, the BiOp has been incorporated into other land management planning documents beyond those for which it was specifically drafted, including the Quartz-Cottonwood Road Project Environmental Assessment, *United States Forest Service* (Aug. 2005) and the Myrtle Creek Healthy Forests Restoration Project Draft Environmental Impact Statement, *United States Forest Service* (May 2006). Additionally, it is likely that the BiOp will also be used as guidance in the environmental planning of the Rising Cougar Project proposed by the Forest Service in the Idaho Panhandle National Forests.

Because the underlying BiOp is in violation of the ESA, it must be withdrawn and cannot be utilized as guidance in these or any other projects proposed by the Forest Service or any other agency. Should the FWS not choose to withdraw the BiOp, Communities for a Great Northwest and Mountain States Legal Foundation will take legal action not less than 60 days from the date of your receipt of this letter.

## IDENTITY AND INTEREST OF COMMUNITIES FOR A GREAT NORTHWEST

Communities for a Great Northwest ("CGNW") is a non-profit natural resource education and information association headquartered in Libby, Montana. Its members live throughout the Inland Northwest and engage in activities within the national forest lands including, fishing, hunting, hiking, camping, timber harvesting, fuelwood gathering, mining, berry picking, sightseeing, finding and enjoying solitude, and wildlife viewing. Roads, trails, and pathways in national forest lands provide access for CGNW members to engage in these activities. CGNW and its members have worked with federal land management agencies and local governments to develop management plans for national forests within the Inland Northwest, including the Kootenai and Idaho Panhandle National Forests. As a result, CGNW and its members have expended tremendous monetary and human resources to ensure the proper management of these national forests.

## IDENTITY AND INTEREST OF MOUNTAIN STATES LEGAL FOUNDATION

Mountain States Legal Foundation ("MSLF") is a voluntary, non-profit, public interest legal foundation with its principal place of business in Lakewood, Colorado. MSLF is dedicated to individual liberty, the right to own and use property, limited and ethical government, and the free enterprise system. It has members who live and work throughout the United States, particularly the American West, including the States of Washington, Idaho, Montana, and Wyoming. MSLF and its members are interested in and affected adversely by the manner in which the ESA is implemented by federal agencies and the construction of that statute by the courts. MSLF members include ranchers, miners, oil and gas producers, timbermen, farmers,

Secretary Kempthorne
August 15, 2006
Page 3 of 7

and property owners who live on and/or earn a living from the public and private lands that
grizzly bear inhabit.

## BACKGROUND

In 1975, the FWS listed the grizzly bear (*Ursus arctos horribilis*) as a threatened species
in the contiguous 48 states pursuant to section 4 of the ESA. 40 *Fed. Reg.* 31,734 (July 28,
1975) (codified at 50 C.F.R. § 17.32 (1975), 50 C.F.R. § 17.11 (2005)). The listing
determination identified three ecosystems in which grizzly bear most often occur: the Selway-
Bitterroot Ecosystem, the Bob Marshall Ecosystem, and the Yellowstone Ecosystem. *Id.* at
31,734–735. Although these three ecosystems were identified, the FWS did not designate them
as recovery units or list them as Distinct Population Segments (DPS). *Id.*

In 1976, the FWS issued a notice of proposed rulemaking to designate four areas as
critical habitat. 41 *Fed. Reg.* 48,757 (Nov. 5, 1976). However, no final regulation designating
critical habitat was issued and critical habitat remains undesignated. 50 C.F.R. § 17.11.

A Grizzly Bear Recovery Plan was developed and issued in 1982; subsequently, it was
revised in 1993. Both the 1982 and 1993 Plans identify six subpopulations of grizzly: the
Yellowstone, the Northern Continental Divide, the Cabinet-Yaak, the Selkirk, the Selway-
Bitterroot, and the North Cascades. However, none of these subpopulations has ever been listed
as a Distinct Population Segment under section 4 of the ESA. While the 1982 Recovery Plan
only provided recovery criteria for three subpopulations, the Yellowstone, Northern Continental
Divide, and Cabinet-Yaak, the 1993 plan revised the recovery criteria to include recovery goals
and objectives for all six subpopulations. Further, in 1986, the Interagency Grizzly Bear
Committee issued its guidelines in order to provide a unified federal structure for agencies
managing public lands in which grizzly bear occur. These guidelines also recognize the six
subpopulations identified in the Recovery Plans.

Additionally, the 1993 Recovery Plan provides that "Grizzly bear populations may be
listed, recovered, and delisted separately." 1993 Recovery Plan at 17. For any such change,
public notice and comment and publication of a final rule in the Federal Register would be
required. *Id.* This does not mean that each grizzly bear subpopulation is a properly listed DPS,
however. This provision merely acknowledges that the FWS may delist a subpopulation by
designating it as a DPS in accordance with section 4 of the ESA and then delisting that properly
listed DPS. In fact, although no DPS has ever been designated, this policy has been
implemented on several occasions.[1]

---

[1] *E.g.*, U.S. Fish & Wildlife Serv., *Designating the Greater Yellowstone Ecosystem
Population of Grizzly Bear as a Distinct Population Segment; Removing the Yellowstone Distinct
Population Segment of Grizzly Bear from the Federal List of Endangered and Threatened
Wildlife*, 70 *Fed. Reg.* 69,854 (Nov. 17, 2005); U.S. Fish & Wildlife Serv., *12-month Finding on
Petitions to Change the Status of the Grizzly Bear Populations in the Selkirk Area of Idaho and
Washington and the Cabinet-Yaak Area of Montana and Idaho from Threatened to Endangered,*

Secretary Kempthorne
August 15, 2006
Page 4 of 7

In 1986, FWS Director Wallenstrom issued a memorandum entitled "Jeopardy Standard Under the Endangered Species Act" which provided guidance to all Regional Directors that subpopulations of nine listed species,[2] which were not themselves listed as DPSs, were to be used instead of the entire listed species or population. Memorandum from Director Wallenstrom to Regional Directors (Mar. 3, 1986) (hereinafter "1986 Memorandum"). The FWS did not publish this memorandum, did not provide the public notice or opportunity for comment, and did not provide legal justification for its identification of the nine species to be afforded this unprecedented treatment.

In a 1979 memorandum, former FWS Director Greenwalt reminded agency personnel that "jeopardy opinions should be rendered only when the proposed activity/action/program, along with cumulative effects, will jeopardize the continued existence of the entire listed species or listed population. Jeopardy opinions cannot be used for individuals or populations unless the loss of such will jeopardize the listed species or listed population throughout its range." 1986 Memo 1 (quoting April 26, 1979, memorandum from Director Greenwalt) (emphasis added).

Although the ESA requires the use of the entire listed species when the FWS makes its jeopardy determinations and then-existing FWS policy required the same, the 1986 Memorandum cited no authority for its departure from this rule. Instead, the FWS simply stated: "[I]t is our intent to allow a limited exception to the established jeopardy standard to more adequately protect certain wide-ranging species for which the application of the standard is problematical." Id. at 2. The 1986 Memorandum continued:

> The species must be composed of discrete population segments that can be dealt with separately when assessing the impact of a given Federal action. Ideally, the identification of these segments is supported by a Service document, i.e., separate recovery plan, recovery objectives that relate to subpopulations, recognition of separate taxonomic status or geographic isolation, etc. It would not be required,

---

64 Fed. Reg. 26,725 (May 17, 1999); U.S. Fish & Wildlife Serv., Notice of Finding on a Petition to Change the Status of the Grizzly Bear Population in the Northern Continental Divide Ecosystem from Threatened to Endangered, 59 Fed. Reg. 46,611 (Sept. 9, 1994); U.S. Fish & Wildlife Serv., Notice of Finding on a Petition to Delist the Grizzly Bear in the Northern Continental Divide Ecosystem, the Cabinet-Yaak Ecosystem, the Selkirk Ecosystem, and the North Cascades Ecosystem, 58 Fed. Reg. 43,856 (Aug. 18, 1993); U.S. Fish & Wildlife Serv., Findings on Petitions To Change the Status of Grizzly Bear Populations in the Cabinet-Yaak Area of Montana and the Selkirk Mountains of Idaho and Washington from Threatened to Endangered, 58 Fed. Reg. 8250 (Feb. 12, 1993); U.S. Fish & Wildlife Serv., Finding on Petition to Reclassify the Grizzly Bear in the North Cascades Area as Endangered, 55 Fed. Reg. 32,103 (Aug. 7, 1990).

[2] Those species include: bald eagle, peregrine falcon, grizzly bear, red-cockaded woodpecker, brown pelican, sea turtles in United States waters, United States populations of ocelot and jaguarundi, and piping plover. 1986 Memorandum at 3–4.

however, that the species actually be listed on the basis of such population categories.

*Id.* at 2–3. The Memorandum then designated, *inter alia,* the six subpopulations of grizzly bear identified in the Recovery Plans for this extra-statutory treatment.

Section 7 of the ESA requires that each federal agency "shall, in consultation with and with the assistance of the Secretary [of the Interior or of Commerce], insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species . . .." 16 U.S.C. § 1536(a)(2). The ESA defines an endangered species as "any species which is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). Likewise, a threatened species is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20). Moreover, the statutory definition of "species" includes "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). Thus, the ESA expressly provides that a DPS may be listed separately; the listed DPS may then constitute a separate species for purposes of jeopardy determinations.

Nowhere does the ESA or its implementing regulations provide that jeopardy determinations may be made on anything less than the totality of a listed species. In fact, FWS regulations expressly provide that jeopardy determinations are to be based on whether the continued existence of a listed species is likely to be jeopardized. 50 C.F.R. § 402.12(h)(3) (2005) ("The Biological Opinion shall include . . . [t]he Service's opinion on whether the action is likely to jeopardize the continued existence of a <u>listed species</u> . . .; or, the action is not likely to jeopardize the continued existence of a <u>listed species</u> . . ..") (emphasis added). Accordingly, the 1986 Memorandum is in violation of sections 4 and 7 of the ESA and the regulations promulgated thereunder and must be withdrawn.[3]

---

[3] Further, the 1986 Memorandum far exceeds the "interpretive rule" exception to the Administrative Procedure Act's (APA's) requirements of public notice and opportunity to comment; therefore, it is also in violation of the APA. Because the 1986 Memorandum purports to change the legal analysis provided by the FWS in its jeopardy determinations for nine species, the FWS should have provided notice and opportunity for public comment, as required by the APA. 5 U.S.C. § 553. While the APA provides an exception to notice and comment for "interpretive rules," *Id.,* because the 1986 Memorandum effects a change in existing policy, changes the legal regime under which jeopardy determinations are made, and has the force and effect of law, it cannot be an "interpretive rule." *Reno-Sparks Indian Colony v. Envtl. Prot. Agency,* 336 F.3d 899 (9th Cir. 2003); *N.Y. State Elec. & Gas Corp. v. Saranac Power Partners,* 267 F.3d 128 (2d Cir. 2001); *Appalachian Power Co. v. Envtl. Prot. Agency,* 208 F.3d 1015 (D.C. Cir. 2000); *Davidson v. Glickman,* 169 F.3d 996 (5th Cir. 1999). Therefore, the public should have been provided notice and the opportunity to comment, as required by the APA.

Secretary Kempthorne
August 15, 2006
Page 6 of 7

## THE 2004 BIOLOGICAL OPINION

At the request of the U.S. Forest Service, the FWS issued a biological opinion regarding the Forest Service's proposed Forest Plan amendments for motorized access within the Selkirk and Cabinet-Yaak ecosystems. U.S. Fish & Wildlife Serv., *Biological Opinion on the Proposed Forest Plan Amendments for Motorized Access Management within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones for the Kootenai, Idaho Panhandle, and Lolo National Forests* (Feb. 9, 2004). The BiOp determined that implementation of the proposed amendments was not likely to jeopardize the continued existence of the grizzly bear, among other federally listed species, and provided an incidental take statement with reasonable and prudent measures and terms and conditions to minimize incidental take of the grizzly bear. *Id.*

In the BiOp, the FWS provided individual analyses for the Selkirk and Cabinet-Yaak subpopulations of grizzly bear. *See, e.g.,* 2004 BiOp 32–62. Moreover, the BiOp expressly based its jeopardy opinion on the proposed action's potential impact to the Selkirk and Cabinet-Yaak subpopulations, individually. *Id.* at 125–127. The FWS did not base the BiOp on the proposed actions' potential impacts to the species as listed, *i.e.,* to the entire grizzly bear population in the contiguous 48 states, as required by the ESA. Likewise, the Incidental Take Statement provided in the BiOp also provides standards based upon the Selkirk and Cabinet-Yaak subpopulations. Therefore, for the reasons outlined in the discussion of the 1986 Memorandum provided above, the BiOp and its attendant Incidental Take Statement are in violation of the ESA and must be withdrawn.

Moreover, the BiOp has been extended beyond the project for which it was drafted; therefore, its withdrawal is necessary to prevent the BiOp from serving as guidance in other federal land management agency planning documents. *See, e.g.,* U.S. Forest Serv., *Proposed Land Management Plan: Kootenai National Forest* 3-5 (May 2006); U.S. Forest Serv., *Proposed Land Management Plan: Idaho Panhandle National Forests* 3-6 (May 2006); U.S. Forest Serv., *Draft Environmental Impact Statement: Myrtle Creek Healthy Forests Restoration Act Project* (May 2006); U.S. Forest Serv., *Environmental Assessment: Quartz-Cottonwood Road Project* 61 (Aug. 2005). Additionally, the BiOp is being used currently as a basis from which to challenge a necessary Forest Service timber project in *Alliance for the Wild Rockies v. Kimbell,* No. 06-CV-192 (E.D. Wash.). Moreover, it is likely that the BiOp will also serve as guidance in the U.S. Forest Service's proposed Rising Cougar Project, a project with the dual goals of maintaining and restoring natural disturbance regimes to a region of the Idaho Panhandle National Forests and managing motorized access and road densities for the benefit of grizzly bear. Thus, it is clear that the BiOp has far exceeded the purpose for which it was drafted, and will continue to be utilized in future Forest Service projects. Therefore, the BiOp must be withdrawn to prevent its continued use.

## CONCLUSION

The use of unlisted subpopulations of grizzly bear to make jeopardy determinations is in violation of sections 4 and 7 of the ESA and the regulations promulgated thereunder. Accordingly, the FWS must withdraw the 2004 BiOp and discontinue the practice of using these

Secretary Kempthorne
August 15, 2006
Page 7 of 7

subpopulations as the basis for jeopardy determinations.  Should the FWS opt to not withdraw the 2004 BiOp and instead continue the use of subpopulations in jeopardy determinations, Communities for a Great Northwest and Mountain States Legal Foundation will file suit in federal court seeking declaratory and injunctive relief, as well as costs and attorneys' fees pursuant to the ESA and the Equal Access to Justice Act.

Sincerely,

MOUNTAIN STATES LEGAL FOUNDATION

Ronald W. Opsahl
Staff Attorney

**Return Receipt 1 (top left)**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Hon. Dirk Kempthorne
Sec. Interior
1849 C Street, NW
Washington DC
20240

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X _David T. Shaw_    □ Agent  □ Addressee
B. Received by (Printed Name)    C. Date of Delivery
David T Shaw    8/21/06
D. Is delivery address different from item 1?  □ Yes
If YES, enter delivery address below:  □ No

3. Service Type
☒ Certified Mail   □ Express Mail
□ Registered       □ Return Receipt for Merchandise
□ Insured Mail     □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number (Transfer from service label)
7004 2510 0006 1985 8024

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**Return Receipt 2 (top right)**

SENDER: COMPLETE THIS SECTION
- Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ralph Morgenweck
Regional Director
USFWS
134 Union Blvd
Lakewood CO
80228

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X _____    □ Agent  □ Addressee
B. Received by (Printed Name)    C. Date of Delivery
Joan Miller    8/23/06
D. Is delivery address different from Item 1?  □ Yes
If YES, enter delivery address below:  □ No

3. Service Type
☒ Certified Mail   □ Express Mail
□ Registered       □ Return Receipt for Merchandise
□ Insured Mail     □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number (Transfer from service label)
7004 2510 0006 1985 8055

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**Return Receipt 3 (bottom left)**

SENDER: COMPLETE THIS SECTION
- Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

H. Dale Hall
Director, USFWS
1849 C Street NW
Washington DC
20240

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X _____    ☒ Agent  □ Addressee
B. Received by (Printed Name)    C. Date of Delivery
A. Giles    8/21/06
D. Is delivery address different from item 1?  □ Yes
If YES, enter delivery address below:  □ No

3. Service Type
☒ Certified Mail   □ Express Mail
□ Registered       □ Return Receipt for Merchandise
□ Insured Mail     □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number (Transfer from service label)
7004 2510 0006 1985 8031

PS Form 3811, February 2004    Domestic Return Receipt

---

**Return Receipt 4 (bottom right)**

SENDER: COMPLETE THIS SECTION
- Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

David Allen
Regional Director
Pacific Region
US FWS
911 NE 11th Avenue
Portland OR 97232

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X _____    □ Agent  □ Addressee
B. Received by (Printed Name)    C. Date of Delivery
CRPD    8/23/06
D. Is delivery address different from Item 1?  □ Yes
If YES, enter delivery address below:  □ No

3. Service Type
☒ Certified Mail   □ Express Mail
□ Registered       □ Return Receipt for Merchandise
□ Insured Mail     □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number (Transfer from service label)
7004 2510 0006 1985 8048

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Communities for a Great Northwest; Mountain States Legal Foundation | U.S. Dep't of Interior; U.S. Fish & Wildlife Serv.; Dirk Kempthorne; H. Dale Hall; Ren Lohoefener; J. Mitch King |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Lincoln, Montana
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ronald W. Opsahl
William Perry Pendley
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021

CASE NUMBER  1:06CV01842

JUDGE: Royce C. Lamberth

DECK TYPE: Administrative Agency Review

DATE STAMP: 10/26/2006

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- O 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- O 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZ FOR PLAIN

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- O A. Antitrust
  - □ 410 Antitrust

- O B. Personal Injury/ Malpractice
  - □ 310 Airplane
  - □ 315 Airplane Product Liability
  - □ 320 Assault, Libel & Slander
  - □ 330 Federal Employers Liability
  - □ 340 Marine
  - □ 345 Marine Product Liability
  - □ 350 Motor Vehicle
  - □ 355 Motor Vehicle Product Liability
  - □ 360 Other Personal Injury
  - □ 362 Medical Malpractice
  - □ 365 Product Liability
  - □ 368 Asbestos Product Liability

- ⊠ C. Administrative Agency Review
  - □ 151 Medicare Act

  **Social Security:**
  - □ 861 HIA ((1395ff)
  - □ 862 Black Lung (923)
  - □ 863 DIWC/DIWW (405(g)
  - □ 864 SSID Title XVI
  - □ 865 RSI (405(g)

  **Other Statutes**
  - □ 891 Agricultural Acts
  - □ 892 Economic Stabilization Act
  - ⊠ 893 Environmental Matters
  - □ 894 Energy Allocation Act
  - □ 890 Other Statutory Actions (If Administrative Agency is Involved)

- O D. Temporary Restraining Order/Preliminary Injunction

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

### O E. General Civil (Other)  OR  O F. Pro Se General Civil

**Real Property**
- □ 210 Land Condemnation
- □ 220 Foreclosure
- □ 230 Rent, Lease & Ejectment
- □ 240 Torts to Land
- □ 245 Tort Product Liability
- □ 290 All Other Real Property

**Personal Property**
- □ 370 Other Fraud
- □ 371 Truth in Lending
- □ 380 Other Personal Property Damage
- □ 385 Property Damage Product Liability

**Bankruptcy**
- □ 422 Appeal 28 USC 158
- □ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- □ 535 Death Penalty
- □ 540 Mandamus & Other
- □ 550 Civil Rights
- □ 555 Prison Condition

**Property Rights**
- □ 820 Copyrights
- □ 830 Patent
- □ 840 Trademark

**Federal Tax Suits**
- □ 870 Taxes (US plaintiff or defendant
- □ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- □ 610 Agriculture
- □ 620 Other Food &Drug
- □ 625 Drug Related Seizure of Property 21 USC 881
- □ 630 Liquor Laws
- □ 640 RR & Truck
- □ 650 Airline Regs
- □ 660 Occupational Safety/Health
- □ 690 Other

**Other Statutes**
- □ 400 State Reapportionment
- □ 430 Banks & Banking
- □ 450 Commerce/ICC Rates/etc.
- □ 460 Deportation

- □ 470 Racketeer Influenced & Corrupt Organizations
- □ 480 Consumer Credit
- □ 490 Cable/Satellite TV
- □ 810 Selective Service
- □ 850 Securities/Commodities/ Exchange
- □ 875 Customer Challenge 12 USC 3410
- □ 900 Appeal of fee determination under equal access to Justice
- □ 950 Constitutionality of State Statutes
- □ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans<br>(excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

16 U.S.C. 1540(g); 5 U.S.C. 706.  Violation of Endangered Species Act consultation and listing provisions

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____  Check YES only if demanded in complaint    JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 10/25/06    SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.