Ronald W. Opsahl, Esq.
William Perry Pendley, Esq.
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
ropsahl@mountainstateslegal.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMMUNITIES FOR A GREAT NORTHWEST, and MOUNTAIN STATES LEGAL FOUNDATION, | ) ) ) ) | Case No. 1:06-CV-01842-RCL |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) | |
| CABINET RESOURCE GROUP, *et al.*, | ) ) ) | |
| Applicants in Intervention. | ) ) | |

Plaintiffs, Communities for a Great Northwest ("CGNW") and Mountain States Legal Foundation ("MSLF"), by and through their attorneys, hereby file their Opposition to the Motion to Transfer Venue filed by Defendants (Doc. No. 22). Defendants have failed to meet their burden to demonstrate that a change in venue is required for the convenience of the parties or that it would be in the interest of justice. Therefore, their Motion should be denied.

## INTRODUCTION

Plaintiffs have brought this action seeking that this Court hold unlawful the United States Fish and Wildlife Service's ("FWS") policy of using subpopulations of grizzly bear during its consultations, contrary to section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536, despite that these subpopulations are not, themselves, listed as threatened or endangered species under the ESA.  Compl. ¶¶ 1–6 (Doc. No. 1).  Therefore, Plaintiffs also seek that this Court require the FWS to withdraw its biological opinion regarding motorized access to certain National Forests in Montana and Idaho, which is based upon this unlawful use of subpopulations. *Id.*  Further, Plaintiffs also ask this Court to enjoin the FWS from using these unlisted subpopulations in all future consultations.  *Id.*

Plaintiff CGNW is a nonprofit corporation located in Libby, Montana, dedicated to providing natural resource education and information to its members.  *Id.* ¶ 10.  CGNW's members live throughout the Inland Northwestern States and engage in a great many activities in the National Forests.  *Id.*  Roads, trails, and pathways in the National Forests provide access for CGNW's members to engage in these activities.  *Id.*  Plaintiff MSLF is a nonprofit, public interest legal foundation headquartered in Lakewood, Colorado, dedicated, in part, to bringing to the courts cases of national significance that relate to the public lands.  *Id.* ¶ 11.  MSLF's members live throughout the United States, including the Rocky Mountain West, and utilize the public lands both as sources of recreation and vocation.  *Id.*

Defendants United States Department of the Interior, the FWS, Dirk Kempthorne, and H. Dale Hall are located in Washington, D.C.  *Id.* ¶¶ 15–18.  The FWS, under the administration of the Department of the Interior, is responsible for implementing the ESA, including the ESA's section 4 and 7 requirements.  *Id.* ¶ 15, 16.  Dirk Kempthorne is the Secretary of the Interior and

H. Dale Hall is the Director of the FWS. *Id.* ¶¶ 15–18. Defendant Ren Lohoefener is the

Regional Director for the Pacific Region of the FWS and is located in Portland, Oregon, and

Defendant J. Mitch King is the Regional Director for the Mountain-Prairie Region of the FWS

and is located in Lakewood, Colorado. *Id.* ¶¶ 19–20. All Defendants are sued in their official

capacity.

In 2004, Defendants issued a biological opinion concerning the potential impacts on

threatened grizzly bear resulting from the United States Forest Service's proposed management

plan controlling motorized users' access on in the Kootenai, Idaho Panhandle, and Lolo National

Forests of Montana and Idaho.[1] U.S. Fish & Wildlife Serv., *Biological Opinion on the Proposed*

*Forest Plan Amendments for Motorized Access Management within the Selkirk and Cabinet-*

*Yaak Grizzly Bear Recovery Zones for the Kootenai, Idaho Panhandle, and Lolo National*

*Forests* (Feb. 9, 2004) (hereinafter "2004 BiOp"). In the 2004 BiOp, the FWS considered only

the impacts of the proposed action as they related to two of the six subpopulations of grizzly

bear, the Selkrik and Cabinet-Yaak subpopulations. *Id.* These subpopulations have never been

listed as threatened or endangered species pursuant to Section 4 of the ESA. Answer ¶ 31 (Doc.

No. 14).

Plaintiffs bring this action pursuant to the Administrative Procedure Act and the

Endangered Species Act. 5 U.S.C. § 706(2); 16 U.S.C. § 1540(g). Plaintiffs allege that FWS's

---

[1] In 1975, the FWS listed the grizzly bear as "threatened" in the conterminous 48 states. 40 *Fed. Reg.* 31,734 (July 28, 1975). Subsequently, in 1986, the FWS identified six subpopulations to be used in determining jeopardy opinions. These six subpopulations are found within Washington, Idaho, Montana, and Wyoming, and include the Yellowstone, the Northern Continental Divide, the Cabinet-Yaak, the Selkirk, the Selway-Bitterroot, and the Northern Cascades populations. Memorandum from Director of the FWS to Regional Directors (Mar. 3, 1986) (hereinafter "1986 Memorandum") (attached hereto as Pl's Ex. 1).

use of these unlisted subpopulations of grizzly bear during section 7 consultations violates sections 4 and 7 of the ESA.  Compl. ¶¶ 45–64.

Section 7 of the ESA provides that all federal agencies "shall, in consultation with and with the assistance of the Secretary, ensure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an 'agency action') is not likely to jeopardize the continued existence of any endangered species or threatened species."  16 U.S.C. § 1536(a)(2).  In addition, federal agencies must consult with the Secretary on any future agency action at the request of a prospective permit or license applicant if there is reason to believe that an endangered or threatened species is present in the project area and "implementation of such action will likely affect such species."  16 U.S.C. § 1536 (a)(3).  Therefore, a jeopardy opinion is to be based upon whether the continued existence of a listed species is likely to be jeopardized.  Since as early as 1979, FWS policy has been consistent with this approach.  For example, in a memorandum from the FWS Director to the Regional Offices, the Director stated that the entire listed species, not just the subpopulation, must be studied during section 7 consultations:

> You are reminded that jeopardy opinions should be rendered only when the proposed activity/action/program, along with the cumulative effects, will jeopardize the continued existence of the entire listed species or listed population. Jeopardy opinions cannot be used for individuals or populations unless the loss of such will jeopardize the listed species or listed population throughout its range.

Memorandum from Director of the FWS to the Regions (Apr. 26, 1979) (quoted in 1986 Memorandum at 1).

In a 1986 memorandum, however, the FWS Director asserted that determining jeopardy based on the entire listed species may not be adequate for certain wide-ranging species, citing no legal authority for that proposition.  1986 Memorandum at 2.  As a result, the FWS Director provided an exception to the established jeopardy standard.  *Id.*  Under this exception, for nine different species and groups of species, jeopardy opinions are to be based upon the proposed

4

actions' impacts, not on the entire listed species, but on informally designated, smaller populations. *Id.* at 3–4. The 1986 Memorandum, again citing no legal authority, named grizzly bear, bald eagle, peregrine falcon, red-cockaded woodpecker, brown pelican, sea turtle, ocelot, jaguarondi, and piping plover for this extra-statutory treatment. *Id.*

Though the ESA permits the listing of "Distinct Population Segments" ("DPSs") separately from the remainder of the species, 16 U.S.C. § 1532(16), the FWS must comply with the statutory requirements for listing a species as threatened or endangered when it designates a DPS.[2] Furthermore, it is clear that Congress intended that the designation of DPSs be limited. Congress explicitly pointed out that it was "aware of the great potential for abuse of this authority and expects FWS to use the ability to list populations sparingly and only when biological evidence indicates that such action is warranted." S.Rep.No. 96-151, at 7 (1979). Moreover, in order for the FWS to authorize a jeopardy opinion on less than the entire species a new listing rule is required. In the case of the grizzly bear, this has not occurred. The 1986 Memorandum does not comply with the statutory requirements of listing. *See* 16 U.S.C. § 1533(b)(5)(A) (providing the requirements of listing). Therefore, the FWS could not have legally designated any of the six grizzly bear subpopulations as DPSs when it issued the 1986 Memorandum.

That the grizzly bear subpopulations are not legally recognized for purposes of section 7 consultation is demonstrated further by their notable absence from the official list of endangered and threatened species. The FWS publishes a listing of all species determined to be threatened

---

[2] The procedure for listing such species includes, *inter alia*: (1) notice of proposed rulemaking published in the *Federal Register* and actual notice to each state and country in which the species is believed to occur; (2) publication of a summary of the proposed regulation in a newspaper of general circulation in each area of the U.S. where the species is believed to occur; (3) a public hearing, if requested; and (4) publication of the final regulation in the *Federal Register*. 16 U.S.C. § 1533(b)(5)(A).

or endangered in the Code of Federal Regulations.  Because a DPS is a species for purposes of

the ESA, any properly designated DPS must appear on the list of threatened or endangered

species.  Only two populations of grizzly bear, however, appear on the list:  (1) all bear within

the conterminous 48 states, except where they are listed as an experimental population; and (2)

the Bitterroot nonessential, experimental population, which occurs in portions of Idaho and

Montana.  50 C.F.R. § 17.11.  Because the six subpopulations of grizzly bear were never listed as

separate DPSs, the practice of the FWS of rendering jeopardy opinions based upon these

subpopulations is unlawful.

## ARGUMENT

Defendants seek to transfer this case to the United States District Court for the District of

Montana, Missoula Division, pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a
> district court may transfer any civil action to any other district or division where it
> might have been brought.

28 U.S.C. § 1404(a).

The purpose of 28 U.S.C. § 1404(a) is to "prevent the waste of time, energy and money

and to protect litigants, witnesses and the public against unnecessary inconvenience and

expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).  Under

this statute, the moving party bears the heavy burden of establishing that transfer is proper.

*Trout Unlimited v. United States Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C. 1996).  Defendants

must make two showings.  First, they must establish that the action could have been brought in

the District of Montana originally.  *Van Dusen*, 376 U.S. at 622.  Second, they must demonstrate

that considerations of convenience and the interest of justice weigh in favor of the transfer.

*Trout Unlimited*, 944 F.Supp. at 16.  The statute "place[s] discretion in the district courts to

adjudicate motions for transfer according to an 'individualized, case-by-case consideration of

convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988)

(quoting *Van Dusen*, 376 U.S. at 622).  Although this Court has broad discretion to adjudicate

motions for transfer under 28 U.S.C. § 1404(a), *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955),

a court may not transfer a case "from a plaintiff's chosen forum simply because another forum,

in the court's view, may be superior to that chosen by the plaintiff." *Pain v. United Tech. Corp.*,

637 F.2d 775, 783 (D.C. Cir. 1980).

      In determining whether a transfer is proper, the Court considers both the private interests

of the parties and the public interests of the courts.  *Stewart Org.*, 487 U.S. at 29–30.  The private

interest factors to be considered include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly
> in favor of the defendants; (2) the defendant's choice of forum; (3) whether the
> claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of
> the witnesses of the plaintiff and defendant, but only to the extent that the
> witnesses may actually be unavailable for trial in one of the fora; and (6) the ease
> of access to sources of proof.

> The public interest considerations include:  (1) the transferee's familiarity with
> the governing laws; (2) the relative congestion of the calendars of the potential
> transferee and transferor courts; and (3) the local interest in deciding local
> controversies at home.

*Trout Unlimited*, 944 F.Supp. at 16 (internal citations omitted).

      In a civil action against an agency or department of the United States government or any

of its officers or employees acting in their official capacity, venue is proper in any judicial

district in which:

> (1) a defendant in the action resides, (2) a substantial part of the events or
> omissions giving rise to the claim occurred . . . , or (3) the plaintiff resides if no
> real property is involved in the action.

28 U.S.C. § 1391(e).  In this action, venue is proper in the District of the District of Columbia,

where four of the six Defendants are located; the District of Colorado, where one of the

Defendants and one of the Plaintiffs are located; the District of Oregon, where the remaining

Defendant is located; or, the District of Montana, where the remaining Plaintiff is located. Moreover, some of the events or omissions giving rise to this action occurred, in part, in each of these Districts and the District of Washington (the 2004 BiOp was co-authored by the Spokane, Washington, FWS field office). The specific policy being challenged was developed, however, in the Office of the Director of the FWS, which is located within the District of the District of Columbia.

Neither Plaintiffs nor Defendants challenge that venue would have been proper in either the District of the District of Columbia or the District of Montana, Def's Memo. in Support of Motion to Transfer at 5, n.1 (Doc. No. 22); thus, this Court must address the relevant private and public factors—factors that the Defendants have failed to demonstrate require a transfer. *Trout Unlimited*, 944 F.Supp. at 16.

## I.     DEFENDANTS HAVE NOT MET THEIR HEAVY BURDEN TO SHOW THAT THE PRIVATE INTEREST CONSIDERATIONS REQUIRE A CHANGE OF VENUE.

Plaintiffs' choice of forum is generally given deference in determining whether a transfer of venue is justified. *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F.Supp 525, 526 (D.D.C. 1987); *Airport Working Group of Orange County, Inc. v. United States Dep't of Defense*, 226 F.Supp.2d 227, 229–230 (D.D.C. 2002). "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Wiren v. Laws*, 194 F.2d 873, 875 (D.C. Cir. 1951) (quoting *Gulf Oil*, 330 U.S. at 508). Deference to the Plaintiffs' chosen forum may be diminished, however, where the transfer is sought to the plaintiffs' resident forum and when the plaintiffs' choice of forum has no factual nexus to the case. *Trout Unlimited*, 944 F.Supp. at 17.

In support if their Motion, Defendants present several points: that Plaintiffs are not located within this District, that the natural resources subject to the 2004 BiOp are located, at

least in part, in Montana, and that one of the Plaintiffs, CGNW, is located in Montana.  Def's

Memo. in Support of Motion to Transfer at 1–2.  While Plaintiffs do not dispute these points,

Defendants have failed to acknowledge that <u>the primary action underlying Plaintiffs' challenges</u>

<u>occurred in this District</u>:  the 1986 Memorandum, signed by the FWS Director, which outlined

the policy that subpopulations of grizzly bear were to be used in all FWS consultations, despite

that these subpopulations are not themselves listed as threatened or endangered species pursuant

to the ESA.  Thus, the events underlying this case, *i.e.*, the 1986 Memorandum and the policy it

outlines, took place in <u>this</u> District, not the District of Montana or any other District.  *But see*

*Sierra Club v. Flowers*, 276 F.Supp.2d 62, 67 (D.D.C. 2003) (transfer proper because there was a

"lack of evidence that federal officials in this forum played an active or significant role in the

decision" (internal quotation omitted)); *Trout Unlimited*, 944 F.Supp. at 17–18 (transfer was

proper because "[t]he decision-making process . . . occurred in Colorado, not Washington,

D.C."); *accord Airport Working Group*, 226 F.Supp. at 230–231.  Accordingly, because a

substantial nexus exists between Plaintiffs' claims and this District, Plaintiffs' chosen forum

must be given deference and Defendants' Motion must be denied.  *See Greater Yellowstone*

*Coalition v. Bosworth*, 180 F.Supp.2d 124 (D.D.C. 2001).

Moreover, the conveniences of the parties support retaining this case in the District of the

District of Columbia.  Four of the six Defendants—the Department of the Interior, the FWS, the

Secretary of the Interior, and the FWS Director—are all located within Washington, D.C.  In

fact, none of the Defendants is located in Defendants' proposed forum, the District of Montana.[3]

Moreover, Defendants' counsel, the United States Department of Justice, is located within

Washington, D.C., and has assigned this case to attorneys within Washington, D.C.  *See Oil,*

---

[3] While the FWS does maintain a field office in Kalispell, Montana, Plaintiffs do not believe that
that office played any role in issuing the 1986 Memorandum.

*Chemical & Atomic Workers v. N.L.R.B.*, 694 F.2d 1289, 1300 (D.C. Cir. 1982) ("courts have considered the location of counsel [and] the location of the parties").

Further, the conveniences of any potential witnesses support retaining this case in this District.  Plaintiffs do not concede that this case concerns solely the review of an administrative decision or that review will be limited to an administrative record.  Because Plaintiffs have not yet been given the opportunity to review the administrative record, they cannot state with any certainty that discovery will not be necessary.  *See* Joint Local Rule 16.3 Report ¶ 6 (Doc. No. 17).  In fact, Plaintiffs have reserved the right to move for discovery should they not be satisfied with the contents of the record.  *Id.* ¶ 8.  Accordingly, this Court should retain this case.  *But see Harris v. Republic Airlines, Inc.*, 699 F.Supp. 961, 963 (D.D.C. 1988) (transfer proper where "no discovery [was] expected to occur in the District of Columbia [and most] of the documents that [were] assumed to be relevant to th[e] case reside[d] in defendants' headquarters in Minnesota").

While, at this point in time, Plaintiffs do not anticipate the need to call as witnesses officials from either of the two FWS field offices that prepared the 2004 BiOp, Plaintiffs may request members of the FWS Director's Washington, D.C., Office either testify in court or be examined in deposition regarding the policy memorialized in the 1986 Memorandum.  *But see DeLoach v. Philip Morris Co.*, 132 F.Supp.2d 22, 25–26 (D.D.C. 2000) ("[T]he absence of compulsory process over a significant number of witnesses favors transfer.").  Further, Plaintiffs may request this Court subpoena, in conjunction with any deposition, documents physically located within this District relating to the 1986 Memorandum; therefore, in the interest of justice, this District should retain this case.  *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F.Supp.2d 92, 98 (D.D.C. 2003).

In a case such as this, where a majority of the Defendants, Defendants' counsel, the documents most likely relevant, and any potential witnesses all reside within this District and the event most significantly underlying Plaintiffs' action occurred within this District, Plaintiffs' preference in this forum must be respected and given its full effect. Defendants' Motion must be denied.

## II.    DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW THAT THE PUBLIC INTEREST CONSIDERATIONS REQUIRE A CHANGE OF VENUE.

It is only after the Court finds the private factors in at least "near equipoise" that it may consider the public factors outlined in *Trout Unlimited. Stewart v. Capitol Area Permanente Medical Group*, 720 F.Supp. 3, 4 (D.C. Cir. 1989); *Pain*, 637 F.3d at 784–85; *Beals v. Sicpa Securink Corp.*, 1994 WL 236081, *3 (D.D.C. 1994). In fact, an evaluation of the private factors can be dispositive, negating the need to consider the public factors at all. *Stewart*, 720 F.Supp. at 4. As outlined above, Defendants have failed to meet their burden that the private factors weigh heavily in favor of transfer and thus venue should remain in this District; however, should this Court find the factors in "near equipoise," Defendants have also failed to meet their burden of showing that the public factors necessitate a transfer.

In evaluating the pubic factors, a court evaluates the public considerations that are relevant to the case. The local interest in having local issues decided locally, the transferee's familiarity with the governing laws, and the possible pendancy of a related case can weigh in favor of a transfer. *Greater Yellowstone Coalition*, 180 F.Supp.2d at 129. "On the other hand, public interest considerations that weigh against a transfer include the possibility that the defendants are forum shopping." *Id.*; *Ferens v. John Deere Co.*, 494 U.S. 516, 527 (1990).

Defendants argue that a transfer would conserve judicial resources, purportedly because Chief Judge Molloy of the District of Montana "has already heard two challenges to this

biological opinion." Def's Memo. in Support of Motion to Transfer at 6.[4] Defendants' argument

fails. Although Judge Molloy may already be "familiar with the biological opinion and the

science behind it, as well as the administrative record," *id.*, Judge Molloy's experience in the

earlier cases is not relevant to Plaintiffs' claims in this case, nor would his experience be

particularly useful to the speedy disposition of this case. That Judge Molloy already has heard

challenges to the 2004 BiOp misses the point. The two previous cases challenged the <u>substance</u>

of the 2004 BiOp, *i.e.*, what level of protection was required. The instant case, however,

challenges the policy underlying the 2004 BiOp, not its substance. In stark contrast to the

questions presented by the earlier cases, the question before this court is what the ESA requires

the agency to consider in making its jeopardy determinations: the listed population or some non-

listed subpopulation. In effect, the plaintiffs in the earlier cases were disputing the placement of

the furniture while the very foundation of the building was cracked.

Moreover, despite Defendants' speculation, Plaintiffs do not anticipate that the

administrative record associated with the 2004 BiOp will be of any great import to this case.

Def's Memo. in Support of Motion to Transfer at 6–8. As noted above, Plaintiffs are not

challenging the substance of the 2004 BiOp; instead, they are arguing that the policy outlined in

the 1986 Memorandum and applied in the 2004 BiOp violates the requirements the ESA. Thus,

this case presents a narrowly targeted question of statutory construction. Accordingly, Judge

Molloy is in no better position than this Court to dispose of this case.

---

[4] Defendants point to two cases recently decided by Judge Molloy: *Alliance for the Wild Rockies v. United States Fish and Wildlife Service*, No. 04-216 (D.Mont.) and *Cabinet Resource Group v. United States Fish and Wildlife Service*, No. 04-236 (D.Mont.). Plaintiffs in these cases challenged the substance of the 2004 BiOp; in neither case, however, were the precise claims presented in this action argued.

While courts may transfer venue to avoid the duplicative litigation that would result from two courts simultaneously hearing two similar cases, such a danger is not present here. *See, e.g.*, *Tice v. Pro Football, Inc.*, 812 F.Supp. 255 (D.D.C. 1993); *Lewis v. Nat'l Football League*, 813 F.Supp. 1 (D.D.C. 1992); *California Farm Bureau Fed'n v. Badgley*, 2005 WL 1532718 (D.D.C. 2005). The two previous cases have been heard, Judge Molloy has issued his final order in each, and both are now on appeal to the Ninth Circuit. Order, Doc. No. 59, *Alliance for the Wild Rockies*, No. 04-216 (D.Mont.); Order, Doc. No. 59, *Cabinet Resource Group*, No. 04-236 (D.Mont.). Thus, there is no risk that a decision in this District would undermine, or run counter to, a decision in the District of Montana. In any event, as noted above, the issues presented here are quite different.

Defendants also argue that the general policy is for local controversies to be resolved in their affected regions. Def's Memo. in Support of Motion to Transfer at 7 (quoting *Gulf Oil*, 330 U.S. at 509). This argument fails under the facts of this case. As noted above, the 1986 Memorandum effectively created *de facto* distinct population segments for nine species and groups of species. 1986 Memorandum at 3–4. Thus, the 1986 Memorandum challenged here has a national reach far exceeding the 2004 BiOp. In fact, Plaintiffs, with this action, ask the Court to enjoin the FWS from using any non-listed subspecies of threatened or endangered species during its section 7 consultations. Accordingly, consultation for all nine species and groups of species identified in the 1986 Memorandum would be affected by a favorable decision in this case. While Defendants note that there are no grizzly bear in Washington, D.C., there are also no sea turtle, ocelot, or jaguarondi (species identified by the 1986 Memorandum) in Montana. Moreover, grizzly bear reside in four states, not just the State of Montana. *Id.* Further, no state-specific Montana law is to be applied in this case; the issues can be resolved

fully under federal statutory law.  *Greater Yellowstone Coalition*, 180 F.Supp.2d at 129 (denying

transfer where the case involved the interpretation of federal statutes only); *but see Trout*

*Unlimited*, 944 F.Supp. at 19 (transfer was proper where the controversy involved, in part, state-

specific law).  Thus, the reasons underlying the preference for local controversies being decided

locally are not present in this case.

       Finally, considerable public resources have been expended in adjudicating this litigation.

*George Washington Univ. v. Diad, Inc.*, 1996 WL 470363, *2 (D.D.C. 1996) (Lamberth, J.)

(citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).  This matter has

been pending for over four months.  *Id.*  The Parties and Applicants in Intervention have filed

numerous memoranda and motions.  *Id.*  A Joint Rule 16 Report has been filed with proposed

dates for scheduling the remainder of this case.  *Id.*  The public's interest in efficient and

inexpensive adjudication is coextensive with the Plaintiffs' interests in obtaining convenient and

effective relief.  *Id.*

       Defendants have failed to meet their burden of demonstrating that the public

considerations require a transfer of venue.  No judicial resources would be conserved with a

transfer, as this case presents a substantially different question than the two District of Montana

cases decided by Judge Molloy.  Neither of the District of Montana cases remain pending, thus

there is no risk of duplicative judicial review.  Judge Molloy's experience with the administrative

record will not assist in the speedy disposition of this case, as Plaintiffs do not anticipate the

administrative record presented for review in the District of Montana cases to be of major import

in this case; thus, Judge Molloy would be in no better position to hear this case than this Court.

This case presents nationally significant issues potentially affecting the management of nine

threatened or endangered species and groups of species, negating any preference that the case be

heard in the District of Montana. Significant public resources already have been expended in adjudicating this litigation in this District. Finally, there is the possibility that Defendants are forum shopping, as Judge Molloy has upheld the substance of the 2004 BiOp on two occasions. Accordingly, Defendants' Motion to Transfer Venue should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs, Communities for a Great Northwest and Mountain States Legal Foundation, respectfully request that Defendants' Motion to Transfer Venue be denied.

DATED this 12th day of March 2007.

Respectfully Submitted By:

/s/ Ronald W. Opsahl
Ronald W. Opsahl, Esq.
William Perry Pendley, Esq.
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
ropsahl@mountainstateslegal.com

Attorneys for Plaintiffs

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of March, 2007, I filed the attached Plaintiffs'
Opposition to Defendants' Motion to Transfer Venue electronically through the CM/ECF
system, which caused the following to be served by electronic means:

James A. Maysonett, Esq.
U.S. Department of Justice
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7397
Washington, D.C. 20044
(202) 305-0216
(202) 305-0275 (facsimile)
james.a.maysonett@usdoj.gov

Timothy J. Preso, Esq.
Douglas L. Honnold, Esq.
Jenny K. Harbine, Esq.
Earthjustice
209 South Willson Avenue
Bozeman, Montana 59715
(406) 586-6999
(406) 586-9695 (facsimile)
tpreso@earthjustice.org

Jason Rylander, Esq.
Defenders of Wildlife
1130 17th Street NW
Washington, D.C. 20036
(202) 682-9400
(202) 682-1331 (facsimile)
jrylander@defenders.org

/s/ Ronald W. Opsahl
Ronald W. Opsahl, Esq.
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
ropsahl@mountainstateslegal.com

Attorney for Plaintiffs

In Reply Refer To:
FWS/OES

MAR - 3 1985

Memorandum

To:        Regional Director, Regions 1, 2, 3, 4, 5, 6, and 7
           (ARD/FA or ARD/AFF)
           Associate
From:      Director    Rolf L. Wallenstrom

Subject:   Jeopardy Standard Under the Endangered Species Act

On April 26, 1979, former Director Greenwalt, in a memorandum to the
regions, defined jeopardy as follows:

> "You are reminded that jeopardy opinions should be rendered only
> when the proposed activity/action/program, along with cumulative
> effects, will jeopardize the continued existence of the entire
> listed species or listed population. Jeopardy opinions cannot
> be used for individuals or populations unless the loss of such
> will jeopardize the listed species or listed population throughout
> its range."

A December 1, 1981, memorandum to the regions on this subject, signed by
Deputy Associate Director O'Connor, included the concept that to achieve
jeopardy an action would have to appreciably reduce the likelihood of the
survival and recovery of a species in the wild. This means that an action
that merely threatens recovery but does not threaten the survival of the
entire listed species or population does not warrant a jeopardy opinion.

Again, on July 27, 1983, in a memorandum to Region 2, signed by Acting
Associate Director Koenings, the April 26, 1979, definition of jeopardy
was affirmed except for changing "will jeopardize" to "is likely to
jeopardize." On February 10, 1984, this standard was summarized in the
Endangered Species Policy Handbook.

Although any action that threatens the survival of a species also threatens
its recovery, the "continued existence" of the species is the key to the
jeopardy standard, placing an emphasis on injury to a species' survival.
However, significant impairment of recovery efforts or other adverse effects
which rise to the level of "jeopardizing" the "continued existence" of
a listed species can also be the basis for issuing a "jeopardy" opinion.
In many cases, the extreme threats faced by some listed species will make
the difference between injury to "survival" and to "recovery" virtually
zero.

500-Broyhill-FWS-OES Reading File, OES Office Copy

PLAINTIFF'S
EXHIBIT

06 -CV- 1842-RCL

PENGAD-Bayonne,N.J.

2

In spite of the above policy direction on this issue, some jeopardy opinions have been issued that fall short of this standard. In particular, there have been a number of jeopardy opinions issued where only a local population of a wide-ranging species is affected; the most common example is the bald eagle. This species is widely distributed throughout the U.S. and the response to the cancellation of the registration of DDT has been a generally improved status throughout its range, yet jeopardy opinions have been issued that involved the disturbance of a single nesting pair.

While the above policy approach works well in the majority of cases, experience has shown that this standard may not adequately address the needs of certain wide-ranging species. The concern is that such species could face sustained loss of individuals or habitat through actions that do not warrant a jeopardy finding but which, nevertheless, could result in significant cumulative habitat and population losses. Thus, the impact of numerous such actions could accumulate until a jeopardy finding is warranted, but by that time habitat or population size could be reduced to the point where the species' status is much more precarious. In some such cases, even if there remains a sufficient habitat and genetic base to avoid extinction, full recovery may not be possible because of political, social, or fiscal constraints.

A good example of this problem involves the grizzly bear, which exists in six disjunct populations within the lower 48 States. Under present policy, it seems possible that all but the largest of these populations, that of the Northern Continental Divide, could be lost due to habitat degradation before a jeopardy finding is warranted. A policy which permits such declines in the population of a wide-ranging species like the grizzly is not consistent with the intent of the Endangered Species Act.

Therefore, it is our intent to allow a limited exception to the established jeopardy standard to more adequately protect certain wide-ranging species for which the application of the standard is problematical. Species qualifying for exceptions are those that can be divided into appropriate populations for Section 7 purposes. We have developed a list of criteria to identify species that may be candidates for specific exceptions to the general policy on jeopardy opinions as follows:

1. The species must be wide-ranging.

2. Evidence exists which shows that the species is being or would be inadequately protected by a strict adherence to the general policy on jeopardy opinions.

3. The species must be composed of discrete population segments that can be dealt with separately when assessing the impact of a given Federal action. Ideally, the identification of these segments is supported by a Service document, i.e., separate recovery plan, recovery objectives that relate to subpopulations, recognition

3

of separate taxonomic status or geographic isolation, etc. It would not be required, however, that the species actually be listed on the basis of such population categories.

To qualify for an exception to the jeopardy standard, the species must meet each of the three criteria.

For such excepted species, a jeopardy finding can be made when the proposed action, along with cumulative effects, is likely to jeopardize a previously identified population segment of the listed species.

We have initially identified seven species that we believe meet the criteria for exception to the jeopardy standard. They are listed below with the specific populations which will qualify for separate consideration under Section 7.

1. Bald eagle
   a. Chesapeake Bay population
   b. Southeast population
   c. Northern States population
   d. Pacific population
   e. Southwest population

   Endangered and threatened populations can be further subdivided within areas c and d.

2. Peregrine falcon (both subspecies)
   a. Alaska population
   b. Pacific States population
   c. Rocky Mountain - Southwest population
   d. Eastern population

3. Grizzly bear
   a. Yellowstone population
   b. Northern Continental Divide population
   c. Cabinet-Yaak population
   d. Selkirk population
   e. Selway-Bitterroot population
   f. North Cascades population

4. Red-cockaded woodpecker

   For this species jeopardy/no jeopardy determinations will be developed by Region 4 using criteria set forth in the June 11, 1985, and subsequent memoranda from the Asheville Field Station to the Regional Director, Region 4, Atlanta, which separates the species into a number of isolated island populations.

5. Brown pelican
   a. Gulf coast population
   b. Pacific coast population
   c. Puerto Rican/Virgin Islands population

6. Sea Turtles - in U.S. waters

7. Ocelot and jaguarundi - U.S. populations

8. Piping plover
   a. Atlantic coast population
   b. Great Lakes population
   c. Northern Great Plains population

Any additional species believed to be eligible for consideration for exceptions to the jeopardy standard will be evaluated on a case-by-case basis and, if approved by the Program Manager, will be added to the above list.

cc: 3256-MIB-FWS-Directorate Reading File
    3256-MIB-FWS-DD Chron
    3024-MIB-FWS-AFA Reading File
    500-Broyhill-FWS-OES Reading File, OES Office Copy
    500-Broyhill-FWS-OES Surname

FWS/OES:LKline:sse:235-2760:9/23/85:disk#1:m-jsesa.lk
redrafted:sse:9/24/85:redrafted:sse:9/27/85:final:sse:9/30/85
redrafted:lp:10/10/85:final:10/11/85:Disk:lp#13:final:sse:2/10/86

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMUNITIES FOR A GREAT NORTHWEST, )
and MOUNTAIN STATES LEGAL )        Case No. 1:06-CV-01842-RCL
FOUNDATION, )
 )
      Plaintiffs, )        **PROPOSED ORDER DENYING**
 )        **DEFENDANTS' MOTION TO**
v. )        **TRANSFER VENUE**
 )
UNITED STATES DEPARTMENT OF THE )
INTERIOR, *et al.*, )
 )
      Defendants, )
 )
and )
 )
CABINET RESOURCE GROUP, *et al.*, )
 )
      Applicants in Intervention. )
_____)

      Upon consideration of Defendants' Motion to Transfer Venue (Doc. No. 22), Plaintiffs'

Opposition, and the record of this case, it is hereby

      ORDERED that the Motion is DENIED.

      ENTERED this _____ day of _____, 2007.


_____
Royce C. Lamberth
UNITED STATES DISTRICT JUDGE