**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| COMMUNITIES FOR A GREAT NORTHWEST, MOUNTAIN STATES LEGAL FOUNDATION,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>    Defendants. | Case No. 1:06-CV-01842-RCL<br><br>**Federal Defendants' Reply in Support of Motion to Transfer Venue** |

On March 2, 2007, the Federal Defendants moved to transfer this case to the District of Montana because the biological opinion challenged here has already been reviewed twice by that Court, and because the natural resources at issue in this case (the national forests and the grizzly bear populations) are located in or near Montana. Docket No. 22. In contrast, this case has no meaningful connection to the District of Columbia. The Plaintiffs now oppose transfer. Plaintiffs' Opposition to Defendants' Motion to Transfer Venue ("Pl. Opp."), Docket No. 23.

The Plaintiffs' opposition reveals that the parties agree on several issues: Venue is proper both here and in the District of Montana. Pl. Opp. at 8. Plaintiff Communities for a Great Northwest is located in Montana, and neither Plaintiff is located in the District of Columbia. Pl. Opp. at 9. The natural resources addressed by this biological opinion are located, at least in part, in Montana. Pl. Opp. at 9.

While they admit the strong connections between this action and the District of Montana, the Plaintiffs still oppose transfer. Surprisingly, their primary argument against transfer is that this case is not really about the biological opinion challenged in their complaint after all. The Plaintiffs argue that this case is not about the grizzly bear or restrictions on motorized access to national forests, despite the extensive allegations on those very subjects presented in their

1

complaint.

 Instead, the Plaintiffs contend that the "primary action" underlying their claims occurred right here in the District of Columbia. Pl. Opp. at 9 (emphasis omitted). That action, according to the Plaintiffs, was a memorandum signed in 1986 by the Director of the United States Fish and Wildlife Service (the "Service" or "FWS"). *Id.* As a result, the Plaintiffs claim that this case has "national reach" and is as much about the "sea turtle, ocelot[1], [and] jaguarondi[2]" as it is about the grizzly bear, and should stay here in the District of Columbia. Pl. Opp. at 13.

 Moreover, the Plaintiffs claim that – because this case is really about a 1986 memorandum[3] – the District of Montana's extensive experience in resolving two challenges to the same biological opinion is "not relevant." Pl. Opp. at 12. Those cases, the Plaintiffs note, did not involve "the precise claims presented in this action . . . ." Pl. Opp. at 12 n.4. And, by extension, the Plaintiffs contend that the District of Montana's familiarity with the administrative

---

[1] The ocelot is a "nocturnal wildcat (*Felis pardalis* or *Leopardus pardalis*) of the brush and forests of the southwest United States and Central and South America, having a grayish or yellow coat with black spots." American Heritage Dictionary (4th ed. 2000).

[2] The jaguarondi is a "long-tailed, grayish-brown wildcat (*Felis yagouaroundi*) of tropical America." American Heritage Dictionary (4th ed. 2000).

[3] While we will address this issue more fully during the briefing on the merits, it is worth noting that the Plaintiffs' reasoning regarding this 1986 memorandum is seriously flawed and seems to rest on a basic misunderstanding of the Endangered Species Act ("ESA"). The Plaintiffs allege that the 1986 memorandum improperly adjusts the "jeopardy" standard, allowing the Service to conclude that a species faces "jeopardy" even when just a sub-population (and not the entire species) is threatened. Compl. ¶ 55. But, as the Plaintiffs admit, the biological opinion challenged here is not a "jeopardy" opinion – the Service concluded that these actions were not likely to jeopardize the continued existence of the grizzly bear. Compl. ¶ 34. What the Plaintiffs are really complaining about are the "reasonable and prudent measures" (or "RPMs") included in the biological opinion that recommend certain restrictions on motorized access to these national forests. Those RPMs, however, are not governed by the "jeopardy" standard and have nothing to do with the 1986 memorandum cited by the Plaintiffs. Instead, the ESA requires the Service to identify such measures to "minimize" the impact of any incidental "take" that may occur as a result of an agency action. 16 U.S.C. § 1536(b)(4)(ii). Because the RPMs are based on independent provisions of the ESA, the Plaintiffs' argument that this memorandum led to unlawful RPMs is a non sequitur.

record is not "of any great import" because the claims here present only a "narrowly targeted question of statutory construction." Pl. Opp. at 12.

These arguments are not credible. The Plaintiffs obviously could not bring a facial challenge to an internal agency memorandum written more than 20 years ago – if nothing else, such a claim would be barred by the statute of limitations. 28 U.S.C. § 2401(a) (setting six-year statute of limitations for claims brought under the Administrative Procedure Act ("APA")). As the Plaintiffs explain in the very first paragraph of their complaint, however, what they are really challenging is the Service's 2004 biological opinion: they "seek review of a biological opinion . . . issued by the [Service] on February 9, 2004 . . . . [that] addresses the purported effects of motorized access within the Kootenai, Idaho Panhandle, and Lolo National Forests." Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Compl.") ¶ 1. That biological opinion is flawed, according to the Plaintiffs, because it "evaluated the purported potential impacts of motorized access on the Selkirk and Cabinet-Yaak subpopulations of the grizzly bear . . . [but failed to] address those potential impacts on the recovery of the entire, listed species." Compl. ¶ 2.

Similarly, the injury that the Plaintiffs allege to establish standing is not based on their new-found interest in the "sea turtle, ocelot, [and] jaguarondi," Pl. Opp. at 13, but on restrictions on motorized access to national forests that are located, in part, in Montana: "[b]ased upon the 2004 Biop, the Forest Service severely restricted motorized access on the Kootenai, Idaho Panhandle, and Lolo National Forests. These access restrictions limited Plaintiffs' members' access to these national forests, significantly and negatively impacting their lawful use of the forests." Compl. ¶ 3; *see also* Compl. ¶¶ 10, 11 (alleging an interest in the "proper management" of these national forests); *id.* ¶ 13 (alleging an injury to the "recreational and educational interests" of the Plaintiffs' members as a result of the Service's alleged "failure to issue a lawful [biological opinion] based upon the properly listed population of threatened grizzly bear . . . .").

The Service, of course, rejects these allegations and maintains that its 2004 biological

opinion was lawful and fully supported by the administrative record.  But those allegations show that this case is a straightforward challenge to the Service's 2004 biological opinion, which was written in part in Montana (and in part in Spokane, Washington), and that opinion's analysis of the effects of motorized access to certain national forests on certain populations of grizzly bear – all of which are located in or near Montana.  It is not a case with "national reach," and it has no meaningful connection to the District of Columbia.  For those reasons, and because the District of Montana has already reviewed this biological opinion twice, it will serve the interests of justice to transfer this case to the District of Montana.

Along these lines, the Plaintiffs also suggest that this case should stay in D.C. because they may need to depose "member of the FWS Directors' Washington D.C. office . . . regarding the policy memorialized in the 1986 Memorandum" or even examine such witnesses in open court, and this Court will be more convenient for these Service witnesses.  Pl. Opp. at 10.  But because this case is a straightforward challenge to the Service's 2004 biological opinion, brought under the APA, judicial review here is limited to the administrative record and governed by the principles of administrative law.[4]  5 U.S.C. § 706; *see also, e.g., Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).  Under those principles, there will be no discovery and no deposition of agency officials (unless the Plaintiffs are somehow able to make the strong showing necessary to demonstrate that judicial review will be frustrated if it is limited to the record – and even then the most appropriate remedy would be to remand the record

---

[4]The Plaintiffs "do not concede that this case concerns solely the review of an administrative decision or that review will be limited to an administrative record," Pl. Opp. at 10, but do not explain why an APA challenge to a biological opinion would be anything other than a record review case, and do not offer any support for their claim that they should be allowed to depose agency officials.  Plaintiffs also that, "[b]ecause [they] have not yet been given the opportunity to review the administrative record, they cannot state with any certainty that discovery will not be necessary."  *Id.*  As the Plaintiffs note, however, the briefing schedule proposed by the parties will give the Plaintiffs an opportunity to challenge the scope of the administrative record (if they believe that such a challenge is necessary).  *Id.*

to the agency).  *See, e.g., Community for Creative Non-Violence v. Lujan*, 908 F. 2d 992, 997 (D.C. Cir. 1990).  And there will certainly not be any examination of agency officials in open court regarding a memorandum written more than 20 years ago, a practice which is strongly disfavored and which would be, under these circumstances, entirely unprecedented.  *Overton Park*, 401 U.S. at 420 (noting that deposing agency decisionmakers is to be avoided unless it is "the only way there can be effective judicial review."); *see also United States v. Morgan*, 313 U.S. 409, 422 (1941) ("[I]t was not the function of the court to probe the mental processes of the Secretary.") (citations omitted).  As such, the "convenience of the witnesses" is not a factor here and does not favor keeping this case in D.C.[5]

      The Plaintiffs touch on a series of issues in their remaining arguments, but none are persuasive.  They argue that transfer is unnecessary because there is no danger of conflicting orders here.  Pl. Opp. at 13.  The possibility of conflicting orders was not the basis for the Federal Defendants' motion to transfer, and there is no immediate possibility of such a conflict because, as the Plaintiffs note, Judge Molloy's decisions are currently on appeal to the Ninth Circuit.  If those decisions are remanded back to the District of Montana for further proceedings, however, it would be useful to have all of these cases in one district to ensure that any further relief is consistent.

      The Plaintiffs also argue that this case should not be transferred because this forum is

---

[5] Oddly, the Plaintiffs also suggest that they may need to "request this Court subpoena . . . documents physically located within this District relating to the 1986 Memorandum . . . ." Pl. Opp. at 10.  This is a record review case, and such a subpoena would not be appropriate.  But even if the Court were to conclude that the Plaintiffs could seek additional documents from the Service, beyond the administrative record, the Plaintiffs could do so through the regular mechanisms of discovery.  It would not matter where the documents were stored, or whether this case was being conducted here or in the District of Montana, as long as the Service was a party to the case.  On the other hand, if the Plaintiffs are trying to suggest that they may need to subpoena documents from some other third-party that resides in the District, they have not even tried to explain who this party might be or what documents they might hold.  As such, the need for a third-party subpoena remains entirely hypothetical and provides no basis to deny transfer here.

more convenient for the Federal Defendants. Pl. Opp. at 9-10. The District of Montana, however, is obviously not inconvenient for the Federal Defendants because we have already litigated this biological opinion twice in that forum. And while we appreciate the Plaintiffs' concern, the Federal Defendants, as the party moving for transfer, have obviously concluded that the interests of justice that will be served by transfer significantly outweigh any potential inconvenience.

Finally, the Plaintiffs suggest that it is too late to transfer this case because the parties have already briefed too many issues and "[s]ignificant public resources already have been expended in adjudicating this litigation in this District." Pl. Opp. at 14-15. The Federal Defendants raised the possibility of transferring this case at their first opportunity, *see* Federal Defendants' Answer, Docket No. 14 (Dec. 20, 2006), and again during the conference of the parties. Joint Meet and Confer Statement, Docket No. 17 (Jan. 26, 2007). The only motions that have been briefed so far are this motion to transfer and a motion for intervention. There have been no other proceedings in this case. Moreover, the Plaintiffs have already agreed to a schedule where their opening motion for summary judgment is not due until June 15, 2007 (at the earliest, and only if there is no dispute over the scope of the administrative record). Joint Meet and Confer Statement, Docket No. 17 (Jan. 26, 2007). As such, there is no possibility that transfer will result in any meaningful delay or harm the Plaintiffs' interest in "obtaining convenient and effective relief." Pl. Opp. at 14.

The bottom line is this – the District of Montana has already heard and resolved two challenges to exactly the same biological opinion, and it will simply be more efficient for that court to hear these claims. Moreover, because the grizzly bears and national forests at issue here are located, at least in part, in Montana, this case has a strong connection with that forum, and no connection at all with the District of Columbia. For these reasons, and all the reasons set out above, this case should be transferred to the United States District Court for the District of Montana.

Dated: March 20, 2007

MATTHEW J. MCKEOWN, Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
JEAN E. WILLIAMS, Chief
LISA L. RUSSELL, Assistant Section Chief

    /s/ James A. Maysonett
_____
JAMES A. MAYSONETT, Trial Attorney (D.C. Bar 463856)
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7397
Washington, D.C. 20044-7397
Telephone: (202) 305-0216
Facsimile: (202) 305-0275
Attorneys for Federal Defendants