Attachment A



# United States Department of the Interior

FISH AND WILDLIFE SERVICE
WASHINGTON, D.C. 20240

ADDRESS ONLY THE DIRECTOR,
FISH AND WILDLIFE SERVICE

In Reply Refer To:
FWS/OES

MAR - 3 1986

Memorandum

To:    Regional Director, Regions 1, 2, 3, 4, 5, 6, and 7
       (ARD/FA or ARD/AFF)
       Associate
From:  Director

Subject: Jeopardy Standard Under the Endangered Species Act

On April 26, 1979, former Director Greenwalt, in a memorandum to the regions, defined jeopardy as follows:

> "You are reminded that jeopardy opinions should be rendered only when the proposed activity/action/program, along with cumulative effects, will jeopardize the continued existence of the entire listed species or listed population. Jeopardy opinions cannot be used for individuals or populations unless the loss of such will jeopardize the listed species or listed population throughout its range."

A December 1, 1981, memorandum to the regions on this subject, signed by Deputy Associate Director O'Connor, included the concept that to achieve jeopardy an action would have to appreciably reduce the likelihood of the survival and recovery of a species in the wild. This means that an action that merely threatens recovery but does not threaten the survival of the entire listed species or population does not warrant a jeopardy opinion.

Again, on July 27, 1983, in a memorandum to Region 2, signed by Acting Associate Director Koenings, the April 26, 1979, definition of jeopardy was affirmed except for changing "will jeopardize" to "is likely to jeopardize." On February 10, 1984, this standard was summarized in the Endangered Species Policy Handbook.

Although any action that threatens the survival of a species also threatens its recovery, the "continued existence" of the species is the key to the jeopardy standard, placing an emphasis on injury to a species' survival. However, significant impairment of recovery efforts or other adverse effects which rise to the level of "jeopardizing" the "continued existence" of a listed species can also be the basis for issuing a "jeopardy" opinion. In many cases, the extreme threats faced by some listed species will make the difference between injury to "survival" and to "recovery" virtually zero.

EXHIBIT 2

2

In spite of the above policy direction on this issue, some jeopardy opinions have been issued that fall short of this standard. In particular, there have been a number of jeopardy opinions issued where only a local population of a wide-ranging species is affected; the most common example is the bald eagle. This species is widely distributed throughout the U.S. and the response to the cancellation of the registration of DDT has been a generally improved status throughout its range, yet jeopardy opinions have been issued that involved the disturbance of a single nesting pair.

While the above policy approach works well in the majority of cases, experience has shown that this standard may not adequately address the needs of certain wide-ranging species. The concern is that such species could face sustained loss of individuals or habitat through actions that do not warrant a jeopardy finding but which, nevertheless, could result in significant cumulative habitat and population losses. Thus, the impact of numerous such actions could accumulate until a jeopardy finding is warranted, but by that time habitat or population size could be reduced to the point where the species' status is much more precarious. In some such cases, even if there remains a sufficient habitat and genetic base to avoid extinction, full recovery may not be possible because of political, social, or fiscal constraints.

A good example of this problem involves the grizzly bear, which exists in six disjunct populations within the lower 48 States. Under present policy, it seems possible that all but the largest of these populations, that of the Northern Continental Divide, could be lost due to habitat degradation before a jeopardy finding is warranted. A policy which permits such declines in the population of a wide-ranging species like the grizzly is not consistent with the intent of the Endangered Species Act.

Therefore, it is our intent to allow a limited exception to the established jeopardy standard to more adequately protect certain wide-ranging species for which the application of the standard is problematical. Species qualifying for exceptions are those that can be divided into appropriate populations for Section 7 purposes. We have developed a list of criteria to identify species that may be candidates for specific exceptions to the general policy on jeopardy opinions as follows:

1. The species must be wide-ranging.

2. Evidence exists which shows that the species is being or would be inadequately protected by a strict adherence to the general policy on jeopardy opinions.

3. The species must be composed of discrete population segments that can be dealt with separately when assessing the impact of a given Federal action. Ideally, the identification of these segments is supported by a Service document, i.e., separate recovery plan, recovery objectives that relate to subpopulations, recognition

3

of separate taxonomic status or geographic isolation, etc. It would not be required, however, that the species actually be listed on the basis of such population categories.

To qualify for an exception to the jeopardy standard, the species must meet each of the three criteria.

For such excepted species, a jeopardy finding can be made when the proposed action, along with cumulative effects, is likely to jeopardize a previously identified population segment of the listed species.

We have initially identified eight species (or groups of species) that we believe meet the criteria for exception to the jeopardy standard. They are listed below with the specific populations which will qualify for separate consideration under Section 7.

1. Bald eagle
   a. Chesapeake Bay population
   b. Southeast population
   c. Northern States population
   d. Pacific population
   e. Southwest population

   Endangered and threatened populations can be further subdivided within areas c and d.

2. Peregrine falcon (both subspecies)
   a. Alaska population
   b. Pacific States population
   c. Rocky Mountain - Southwest population
   d. Eastern population

3. Grizzly bear
   a. Yellowstone population
   b. Northern Continental Divide population
   c. Cabinet-Yaak population
   d. Selkirk population
   e. Selway-Bitterroot population
   f. North Cascades population

4. Red-cockaded woodpecker

   For this species jeopardy/no jeopardy determinations will be developed by Region 4 using criteria set forth in the June 11, 1985, and subsequent memoranda from the Asheville Field Station to the Regional Director, Region 4, Atlanta, which separates the species into a number of isolated island populations.

4

5. Brown pelican
   a. Gulf coast population
   b. Pacific coast population
   c. Puerto Rican/Virgin Islands population

6. Sea Turtles - In U.S. waters

7. Ocelot and jaguarundi - U.S. populations

8. Piping plover
   a. Atlantic coast population
   b. Great Lakes population
   c. Northern Great Plains population

Any additional species believed to be eligible for consideration for exceptions to the jeopardy standard will be evaluated on a case-by-case basis and, if approved by the Program Manager, will be added to the above list.