UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNITIES FOR A GREAT NORTHWEST, MOUNTAIN STATES LEGAL FOUNDATION,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>    Defendants. | Case No. 1:06-CV-01842-RCL<br><br>**FEDERAL DEFENDANTS' MOTION TO DISMISS** |

COME NOW, the Federal Defendants, by and through undersigned counsel, and hereby move the Court to dismiss this action, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1] In support of this Motion, and in accordance with LCvR 7(a) of the local rules of this Court, Federal Defendants include the following statement of specific points and authorities.

**INTRODUCTION**

"In this action, Plaintiffs seek review of a biological opinion ('BiOp') issued by the United States Fish and Wildlife Service ('FWS' [or the 'Service']) on February 9, 2004, following consultation with the United States Forest Service ('Forest Service') under Section 7 of the Endangered Species Act ('ESA'), 16 U.S.C. § 1536." First Amended Complaint for Declaratory and Injunctive Relief [Docket No. 31] ("Amended Complaint") at ¶ 1. This BiOp has since been withdrawn because the underlying agency action it addresses has been vacated by the District Court

---

[1] As noted in Federal Defendants' previously filed motion to stay briefing on cross-motions for summary judgment [Docket No. 34], Federal Defendants await ruling on a motion to transfer venue to the District of Montana [Docket No. 22]. Federal Defendants express no position on whether this Court or the District of Montana should rule on this motion to dismiss, but do assert that, because of the jurisdictional basis of this motion, it should be addressed by either court before substantive issues are addressed through cross-motions for summary judgment. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101 (1998).

in Montana and is on remand to the Forest Service for consideration anew. Accordingly, Federal Defendants move to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction because Plaintiffs' claims are now moot.

## BACKGROUND

### I.     STATUTORY AND REGULATORY BACKGROUND

Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), requires each federal agency to ensure that any action authorized, funded, or carried out by that agency "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat. To achieve this objective, the agency proposing the action (the "action agency") is required to consult with FWS or the National Marine Fisheries Service ("NMFS")[2] whenever a federal action "may affect" a listed species. 50 C.F.R. § 402.14(a). Unless the action agency determines with the written concurrence of the consulting agency that an action is "not likely to adversely affect" the listed species or critical habitat, it must engage in "formal consultation." 50 C.F.R. §§ 402.14(a), (b). Formal consultation typically begins with a written request by the action agency, 50 C.F.R. § 402.14(c),[3] and concludes with the issuance of a BiOp by the consulting agency. 50 C.F.R. § 402.14(*l*)(1). The BiOp assesses the likelihood of jeopardy to the species and whether the proposed action will result in destruction or adverse modification of critical habitat. See 50 C.F.R. § 402.14(g).

---

[2]     FWS and NMFS share responsibilities for administering the Act depending on the species involved. 16 U.S.C. § 1533(a)(2); 50 C.F.R. § 402.01(b). In this case the species at issue, the grizzly bear, is under FWS' jurisdiction. Accordingly, Federal Defendants refer to FWS hereinafter.

[3]     The action agency may prepare a biological assessment unless the activity is a major construction activity, in which case a biological assessment must be prepared. 16 U.S.C. § 1536(c); 50 C.F.R. § 402.12(b).

If the consulting agency determines that the action is likely to jeopardize the continued existence of the species or result in an adverse modification of critical habitat ("a jeopardy or adverse modification determination"), it must determine whether any "reasonable and prudent alternatives" ("RPAs") exist for the action which will not violate Section 7(a)(2). 16 U.S.C. § 1536 (b)(3)(A); 50 C.F.R. § 402.14(h)(3).

If the consulting agency determines that the proposed action -- whether as proposed or as modified by a reasonable and prudent alternative -- is not likely to jeopardize the species, but may result in the incidental "take" of individual members of the species, the consulting agency provides an "incidental take statement" along with the BiOp. 16 U.S.C. § 1536(b)(4)(i)-(ii). Under ESA Section 7(b)(4)(i)-(ii), the incidental take statement must specify the impact of the incidental taking to the species and specify those "reasonable and prudent measures" ("RPMs") that the consulting agency considers "necessary or appropriate" to minimize the impact of the incidental take. Id. "[A]ny taking that is in compliance with the terms and conditions specified in a written [incidental take] statement . . . shall not be considered to be a prohibited taking of the species concerned." 16 U.S.C. §1536(o)(2).

## II.    FACTUAL BACKGROUND[4]

Plaintiffs' Amended Complaint involves the grizzly bear (*Ursus arctos horribilis*). See, e.g., Amended Complaint at ¶ 2. The Service listed the grizzly bear as a threatened species under the ESA in 1975. See id. at ¶ 21. In 2004, at the request of the United States Forest Service, the FWS issued a BiOp regarding the Forest Service's proposed Forest Plan amendments for motorized access

---

[4]    For the purposes of this Motion to Dismiss, the factual allegations of the Amended Complaint are used.

within the Kootenai, Idaho Panhandle, and Lolo National Forests. See id. at ¶ 41. This BiOp determined that implementation of the proposed amendments was not likely to jeopardize the continued existence of the grizzly bear. See id. at ¶ 42. This BiOp also provided an incidental take statement for grizzly bear. See id.

This BiOp has been the subject of two prior cases, each in the District of Montana. See Alliance for the Wild Rockies v. U.S. Fish & Wildlife Service, No. 04-216 (D. Mont. Aug. 29, 2006), and Cabinet Resource Group v. U.S. Fish & Wildlife Service, 465 F. Supp. 2d 1067 (D. Mont. 2006). See 465 F. Supp. 2d at 1071. In each case, the BiOp was upheld against various challenges. See id. at 1071, 1084-92. In the latter case, however, the Forest Service's underlying environmental impact statement and record of decision adopting Forest Plan amendments regarding motorized access management were set aside on National Environmental Policy Act ("NEPA") grounds. See id. at 1092-1101. On remand, the Forest Service intends to prepare a supplemental environmental analysis, which will result in a new or modified decision on access management. See Forest Service letter dated April 16, 2007 (attached hereto as Exhibit 1). Relatedly, and consistent with the Montana District Court's order, the Forest Service noted that "the previous access strategy is no longer in place." Id. In response, the FWS officially withdrew the BiOp. See FWS letter dated May 17, 2007 (attached hereto as Exhibit 2). Any new access strategy will be the subject of a new formal consultation which will result in a new BiOp. See Exhibits 1 and 2.

## STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a court to dismiss a claim on the basis of a lack of subject-matter jurisdiction. A motion to dismiss under the mootness doctrine is properly brought pursuant to Rule 12(b)(1). See District of Columbia v. Jeppsen, 468

4

F. Supp. 2d 107, 110-11 (D.D.C. 2006). "The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (citations omitted). A Federal court does not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Accordingly, moot cases must be dismissed for lack of jurisdiction. Lewis v. Continental Bank Corp., 494 U.S. 472, 477-79 (1990); Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (a case must be dismissed if it appears that it is moot at any stage in the litigation).

A claim is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir. 1990). The D.C. Circuit explained further that a case is moot if "intervening events make it impossible to grant the prevailing party effective relief." Burlington Northern R.R. Co. v. Surface Transp. Bd., 75 F.3d 685, 688 (D.C. Cir. 1996) (citing Church of Scientology, 506 U.S. at 11)).

"Pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. In turn, the court has an 'affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority, . . . which includes the obligation to determine whether the plaintiffs' claims are moot." Buesgens v. Coates, 435 F. Supp. 2d 1, 3 (D.D.C. 2006) (citing Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), and Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994)). Under

Rule 12(b)(1), "[w]hen the defendant has thus challenged the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead, the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (citing cases). See also, e.g., Tootle v. Secretary of the Navy, 446 F.3d 167, 174 (D.C. Cir. 2006). Thus, it is well settled that a district court may consider material outside the pleadings in deciding a Rule 12(b)(1) motion. See id.

## ARGUMENT

By their own terms, "[i]n this action, Plaintiffs seek review of a biological opinion ('BiOp') issued by the United States Fish and Wildlife Service ('FWS') on February 9, 2004, following consultation with the United States Forest Service ('Forest Service') under Section 7 of the [ESA]." Amended Complaint at ¶ 1. For relief, Plaintiffs seek various declarations about this BiOp and associated injunctive relief, including to have it be held unlawful and be set aside. See id. at 16-17. Plaintiffs also seek various declarations and associated injunctive relief aimed at any new consultations or BiOps that may occur as a result. See id. at 17. Because this BiOp has since been withdrawn, Plaintiffs' action is now moot and thus must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. See Committee in Solidarity with People of El Salvador v. Sessions, 929 F.2d 742, 744-45 (D.C. Cir. 1991) (affirming dismissal as moot where, while case was pending, plaintiffs obtained "the relief [they] requested").[5]

---

[5] Plaintiffs also seek attorneys' fees and costs as part of the relief they seek, see Amended Complaint at 17; however, such a request does not preserve a case which is otherwise moot. See Friends of Keeseville, Inc. v. FERC, 859 F.2d 230, 233 n.7 (D.C. Cir. 1988).

Out of an abundance of caution, Federal Defendants further review each claim of the Amended Complaint, explaining why each is now moot, as well as why no exception to mootness applies.

## I.     PLAINTIFFS' FIRST CLAIM IS MOOT.

Plaintiffs' first claim for relief is focused solely on the ESA Section 7 consultation between FWS and the Forest Service, regarding the Forest Service's proposed Forest Plan amendments for motorized access within the Kootenai, Idaho Panhandle, and Lolo National Forests, and its resulting BiOp. See Amended Complaint at 12-14. Specifically, Plaintiffs allege that they "have suffered 'legal wrong' and were 'adversely affected' and/or 'aggrieved' by FWS's issuance of the 2004 BiOp." Id. at ¶ 67. However, this BiOp has since been withdrawn. See Exhibit 2. Because this is precisely the relief Plaintiffs sought, see id. at 17 (seeking to have the BiOp "set aside"), Plaintiffs' first claim is now moot. There is now no effective relief this Court could provide on Plaintiffs' first claim. Any declaration about the BiOp or its underlying consultation would now just be advisory, as it would affect no legal rights at issue in this case.

Such a finding of mootness is fully in accord with cases from other circuits holding that a challenge to a BiOp is moot upon the reinitiation of consultation and/or the Service's issuance of a superseding BiOp. See, e.g., Forest Guardians v. U.S. Forest Service, 329 F.3d 1089, 1096 (9th Cir. 2003); American Rivers v. National Marine Fisheries Service, 126 F.3d 1118, 1123-24 (9th Cir. 1997); Idaho Department of Fish & Game v. National Marine Fisheries Service, 56 F.3d 1071, 1074-75 (9th Cir. 1995); Greenpeace Foundation v. Mineta, 122 F. Supp. 2d 1123, 1128 (D. Haw. 2000). See also Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 728 (10th Cir. 1997) (finding challenge regarding timing of informal consultation moot once such consultation was completed).

Here, as in these other cases, there is nothing left for this Court to compel. Indeed, the situation here goes further than in those other cases. Although in this case there is not yet any superseding BiOp, the underlying agency action addressed by the BiOp has been vacated and there is not yet any new agency action that could form the basis for any new BiOp. Under these circumstances, Plaintiffs cannot be harmed by the withdrawal of the BiOp at issue, and thus any claims related to that BiOp are now moot.

Perhaps Plaintiffs will attempt to avoid this mootness issue by claiming that various declarations by this Court could help guide the expected new agency action, its consultation, and resulting BiOp. But such a speculative or hypothetical claim will not save this case. Article III of the U.S. Constitution requires an actual case or controversy. At this time, the underlying agency action at issue has been set aside and, thus, its BiOp has been withdrawn. See Exhibits 1 and 2. Any declaration on these now withdrawn items would simply be a prohibited advisory opinion. See, e.g., Church of Scientology, 506 U.S. at 12. Moreover, when any new BiOp on any new agency action issues, it will be based on its own administrative record. Any challenges to such a new BiOp should be decided on its own record, and will thus be ripe only once such a new BiOp in fact issues.

Nor does any recognized exception to mootness -- such as "capable of repetition yet evading review" or "voluntary cessation of illegal activity" -- apply here. Even assuming arguendo that the issues are capable of repetition upon issuance of new Forest Plan amendments, and a corresponding new BiOp, the new BiOp is not likely to evade review.[6] Challenges to BiOps are quite

---

[6]    Moreover, it is unlikely that the issues Plaintiffs raise are even capable of repetition. A Service memorandum dated March 6, 2006 states:

> Jeopardy analyses, conducted as part of a section 7 consultation, must always consider the impacts of a proposed action on the survival and recovery of the species
> (continued...)

commonplace, and there is nothing about the BiOp at issue, or any expected future BiOp, that makes them too ephemeral to be challenged without invoking this exception. See, e.g., American Rivers, 126 F.3d at 1124 (holding that a challenge to a BiOp did not fit the mootness exception because the future BiOp could be subjected to legal challenge); Idaho Department of Fish & Game, 56 F.3d at 1074-75 (holding that a BiOp that would last for three years provided "more than enough time for litigants to obtain judicial review"). Indeed, the BiOp here has already been twice reviewed and upheld by the District Court in Montana.

Nor does the "voluntary cessation" exception apply here. That exception was developed in order to prevent a private defendant from manipulating the judicial process by voluntarily stopping the complained-of activity, and then seeking a dismissal of the case, "thus securing freedom to 'return to his old ways'" at any time. Clarke, 915 F.2d at 705 (citations omitted). As an initial matter, it may be inappropriate for a judicial body to apply the voluntary cessation exception (and the manipulative conduct the exception assumes) to the executive branch of government. This

---

6/(...continued)
    (as "species" is defined by the Endangered Species Act) that is listed. While a proposed Federal action may have significant adverse consequences to one or more "recovery units," this would only result in a jeopardy determination if these adverse consequences reduce appreciably the likelihood of both the survival and recovery of the listed entity.

    * * *

    As a point of clarification, the previous practice granting exceptions to make jeopardy determinations for certain populations by way of a memorandum is discontinued. Any future jeopardy determinations for listed species, including species for which an exception memorandum was previously issued, must comport with the guidance described in this memorandum.

A copy of this memorandum is attached hereto as Exhibit 3. Thus, any future BiOp likely will be guided by a different approach than that in the "1986 Memorandum," thereby undercutting any claim or defense by Plaintiffs that their alleged issues should escape mootness because they are capable of repetition.

Circuit has already reasoned that "it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose." Id. (referring to Congress). Certainly here the question of such manipulative conduct by the executive branch of the federal government is equally pertinent. In any event, Federal Defendants' actions here cannot properly be cast as this type of "voluntary cessation." Federal Defendants have not sought to avoid proper challenges to the BiOp at issue here; indeed, they have already litigated the merits of this BiOp twice. See Cabinet Resource Group, 465 F. Supp. 2d at 1071. Nonetheless, for reasons entirely separate from the ESA, the underlying agency action has been set aside and remanded to the Forest Service for further analysis. See id. at 1101; Exhibit 1. Accordingly, the BiOp, even though it had twice been found lawful, no longer attached to any agency action. For this reason, it was withdrawn. See Exhibit 2. Under these circumstances, Federal Defendants are hardly free to return to their "old ways," and the "voluntary cessation" exception is not applicable here.

## II. PLAINTIFFS' SECOND CLAIM IS MOOT.

Plaintiffs' second claim for relief is also focused on the ESA Section 7 consultation between FWS and the Forest Service, regarding the Forest Service's proposed Forest Plan amendments for motorized access within the Kootenai, Idaho Panhandle, and Lolo National Forests, and its resulting BiOp. See Amended Complaint at 15-16. Thus, for all the reasons noted above, this claim is also moot.

The only discernable differences among these claims is that the second claim also complains about an earlier "1986 Memorandum" and "1998 Consultation Handbook" that Plaintiffs claim to be the sources of alleged errors in (or perhaps simply reflected in) the BiOp. See Amended

Complaint at ¶¶ 25-29, 33-37, 74-80. In these documents, Plaintiffs also appear to allege violations of Section 4 of the ESA. See id. at ¶¶ 75-77. But these are distinctions without a difference. Now that the BiOp has been withdrawn, the 1986 Memorandum and 1998 Consultation Handbook cannot have any concrete effect on Plaintiffs' interests. Any decision on either the 1986 Memorandum and 1998 Consultation Handbook under these circumstances would simply be advisory. Moreover, as Plaintiffs apparently recognize, they can challenge this 1986 Memorandum and/or this 1998 Consultation Handbook only through the BiOp, as only the BiOp is "final agency action." Id. at ¶ 80. Indeed, any attempt to argue otherwise would raise issues that Plaintiffs could not overcome, including the requirement for "final agency action" under the Administrative Procedure Act, and the six-year statute of limitations of 28 U.S.C. § 2401(a). Because the BiOp has now been withdrawn, any challenges to the 1986 Memorandum or 1998 Consultation Handbook to which the BiOp allegedly refers or relies upon are also now moot. Furthermore, the mootness of any challenge to the 1986 Memorandum is only amplified in light of the Service's 2006 memorandum, which effectively withdraws the 1986 Memorandum (assuming, only for the purposes of this motion to dismiss, that the 1986 Memorandum was in force and applied to the BiOp at issue here). See Exhibit 3.

## CONCLUSION

For the reasons stated above, Federal Defendants respectfully request that this Court dismiss this case, with prejudice.

Dated: June 15, 2007                Respectfully submitted,

                                        RONALD J. TENPAS, Acting Assistant Attorney General
                                      United States Department of Justice
                                      Environment and Natural Resources Division
                                      JEAN E. WILLIAMS, Chief

SETH M. BARSKY, Assistant Section Chief

   /s/ Joseph H. Kim
JOSEPH H. KIM, Trial Attorney (IL Bar 6243249)
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7397
Washington, D.C. 20044-7397
Telephone: (202) 305-0207
Facsimile: (202) 305-0275

Attorneys for Federal Defendants



| United States Department of Agriculture | Forest Service | Kootenai National Forest  406 293-6211 | Forest Supervisor's Office  1101 US Highway 2 West  Libby, MT 59923 |
|---|---|---|---|

File Code: 1950/2670
Date: April 16, 2007

**RECEIVED**
APR 18 2007
U.S. FISH & WILDLIFE SERVICE
ECOLOGICAL SERVICES
SPOKANE, WA

Susan Martin
United States Fish & Wildlife Services
11103 E. Montgomery Drive
Spokane, WA 99206

Dear Susan,

The Forest Service intends to prepare a supplemental environmental analysis in response to the District court decision in the Cabinet Resources Group, et al. vs. the United States Fish and Wildlife Service (FWS) and the United States Forest Service, CV 04-236-M-DWM, (Order December 13, 2006). The supplement will address the issues identified by the court and will result in a new or modified decision which addresses access management for grizzly bears.

We will consult with the Fish and Wildlife Service pursuant to section 7(a) (2) of the Endangered Species Act (ESA) prior to adoption of a final strategy. In light of the court's order of December 13, 2006 the previous access strategy is no longer in place.

We look forward to working closely with the FWS to insure compliance with ESA during this analysis.

Sincerely,

PAUL BRADFORD
Forest Supervisor

cc: Deborah L Austin, Ranotta McNair, Julia Riber, Alan J Campbell, John McKay, Quinn Carver, John Gubel, Mark Wilson - FWS



Caring for the Land and Serving People          Printed on Recycled Paper



# United States Department of the Interior

FISH AND WILDLIFE SERVICE



*Upper Columbia Fish and Wildlife Office*
*11103 East Montgomery Drive*
*Spokane, Washington 99206*

May 17, 2007

Paul Bradford, Forest Supervisor
Kootenai National Forest
1101 U.S. Highway 2 West
Libby, Montana 59923

Subject: Biological Opinion on the Proposed Forest Plan Amendment for Motorized Access Management within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones for the Kootenai, Idaho Panhandle, and Lolo National Forests

Dear Mr. Bradford:

This letter responds to your April 16, 2007, letter stating the United States Forest Service's (Forest Service) intention to prepare a supplemental environmental analysis for the subject Forest Plan Amendment. On December 13, 2006, the District Court for the District of Montana remanded the 2002 Final Environment Statement and 2004 Record of Decision for the subject action to the Forest Service for the preparation of a new environmental analysis (CV 04-236-M-DVM). Your letter stated that the supplemental environmental analysis will result in a new or modified action, and that the previous access strategy is no longer in place.

Inasmuch as the previously consulted-on action is no longer valid, the Service is officially withdrawing the subject biological opinion (FWS Ref. No. 1-9-02-F-048). The Forest Service should consult with the U.S. Fish and Wildlife Service (Service) prior to the adoption of a final strategy. As you stated in your letter, we also look forward to working closely with the Forest Service to ensure compliance with the Endangered Species Act of 1973, as amended.

Sincerely,

Susan B. Martin

Supervisor

cc: FS, IPNF, CdA SO (Attn: Ranotta McNair, Shanda Dekome)
   FS, Lolo NF, Missoula, MT (Attn: Deborah Austin)
   FWS, Helena, Mt.
   FWS, Kalispell, Mt.
   DOI Solicitor's Office, Region 1 (Eric Nagle)




# United States Department of the Interior

FISH AND WILDLIFE SERVICE
Washington, D.C. 20240

In Reply Refer To:
FWS/AES/DCHRS/024358            **MAR 0 6 2006**

Memorandum

To:             Regional Directors, Region 1, 2, 3, 4, 5, 6, and 7
                Manager, California/Nevada Operations Office

From:           Director /s/ Dale Hall

Subject:        Recovery Units and Jeopardy Determinations under Section 7 of the
                Endangered Species Act

The purpose of this memorandum is to clarify the role of recovery units in making jeopardy determinations as part of interagency consultations conducted pursuant to Section 7(a)(2) of the Endangered Species Act of 1973, as amended (16 U.S.C. 1531 *et seq.*). This subject is also addressed on pages 4-36 through 4-38 of the March 1998 edition of the Endangered Species Consultation Handbook.

"Recovery units" may be identified as part of the Recovery Planning process for listed species. This approach can be useful in addressing the conservation needs of a species when different populations face different threats or where the actions needed to address the threats may differ across the range of the species. Application of this approach is at the discretion of the Regional Director charged with lead responsibility for the recovery of the species.

It is important to recognize that the establishment of "recovery units" does not create a new listed entity. Jeopardy analyses, conducted as part of a section 7 consultation, must always consider the impacts of a proposed action on the survival and recovery of the species (as "species" is defined by the Endangered Species Act) that is listed. While a proposed Federal action may have significant adverse consequences to one or more "recovery units," this would only result in a jeopardy determination if these adverse consequences reduce appreciably the likelihood of both the survival and recovery of the listed entity. The penultimate paragraph on page 4-36 of the Consultation Handbook provides the following elaboration related to this matter:

> When an action appreciably impairs or precludes the capacity of a recovery unit from providing both the survival and recovery function assigned to it, that action may represent jeopardy to the species. When using this type of analysis, include in the biological opinion a description



of how the action affects not only the recovery unit's capability, but the relationship of the recovery unit to the both the survival and recovery of the listed species as a whole.

As a point of clarification, the previous practice granting exceptions to make jeopardy determinations for certain populations by way of a memorandum is discontinued. Any future jeopardy determinations for listed species, including species for which an exception memorandum was previously issued, must comport with the guidance described in this memorandum.

In summary, jeopardy determinations must assess whether the proposed action is likely to reduce appreciably both the survival and recovery of the listed species in the wild—as opposed to merely documenting significant adverse effects to one or more "recovery units." Please direct any questions regarding this memorandum to Rick Sayers, Chief, Division of Consultation, Habitat Conservation Planning, Recovery, and State Grants.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNITIES FOR A GREAT NORTHWEST, MOUNTAIN STATES LEGAL FOUNDATION,  Plaintiffs,  v.  UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,  Defendants. | Case No. 1:06-CV-01842-RCL  **[PROPOSED] ORDER ON FEDERAL DEFENDANTS' MOTION TO DISMISS** |

This matter having come before the Court on the Federal Defendants' Motion to Dismiss, it is hereby **ORDERED** that the motion is **GRANTED**. Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief [Docket No. 31] is hereby dismissed (with prejudice) as moot pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**,

_____   _____
Dated                                       Royce C. Lamberth
                                                  United States District Judge